# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MINNESOTA

**Cause No: 24-cv-100 SRN/DTS**

| | |
|---|---|
| PRESTON BYRON KNAPP; MICHELLE NICHOLE KNAPP. | |
| *Plaintiffs,* | Honorable Judge Susan Richard Nelson Magistrate Judge David T. Shultz |
| vs. | |
| COMPASS MINNESOTA, LLC; DANIEL PHILIP HOLLERMAN (*official and individual capacities*). | |
| *Defendants.* | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS JOINT MOTION TO DISMISS AND REBUTTAL OF JOINT MEMORANDUM OF LAW IN SUPPORT**

COME NOW, Plaintiffs, Pro Se, PRESTON BYRON KNAPP and MICHELLE NICHOLE KNAPP, by and through, Preston Byron Knapp and Michelle Nichole Knapp, pursuant to the Court's *Amended Briefing Schedule Order* (*Id*. at dkt 33) and Local Rule 7.1(c)(2), allege and state as follows:

## GENERAL OBJECTIONS

Plaintiffs object to the *Defendants' Joint Motion to Dismiss*, asserting that it not only lacks the necessary merit but also fails to permit a thorough judicial review as required by law. This objection is notably supported by the principle articulated in *Trinsey v. Pagliaro*, 229 F. Supp. 647 (Eastern District. Pa. 1964), which established that a motion to dismiss for failure to state a claim, if not accompanied by proper affidavits or depositions, is incomplete. The

Defendants' attempt to circumvent the affidavit requirement from the party involved, substituting it with a "Declaration from Attorney Robert J. Kouba," misleadingly presented as an affidavit (as filed at docket no. 13), not only undermines the judicial process but also deviates from the legal standards set forth in *Trinsey v. Pagliaro*. The reliance on counsel's statements, whether in briefs or oral arguments, without the support of authentic and verifiable evidence, is insufficient for the purposes of granting a motion to dismiss or summary judgment. Hence, the Plaintiffs contend that the Defendants' Motion not only fails to meet the requisite legal standards but also attempts to sidestep procedural norms, necessitating its denial by this Court.

In addition to the procedural shortcomings already outlined, it is important to address the substantive inadequacies of the *Defendants' Joint Motion to Dismiss*. Despite its failure to meet the foundational legal requirements for dismissal, the Plaintiffs are prepared to systematically refute each of the rhetorical assertions presented by the Defendants in their *Joint Memorandum*. This response will further illustrate not only the merit of the Plaintiffs' claims but also the insufficiency of the Defendants' arguments to warrant dismissal at this juncture.

Further, the Defendants' present the following nonsensical assertion, in their joint memorandum, in what the plaintiffs believe is an attempt to mislead the Court: "*Furthermore, the Knapps' failed to serve Defendants pursuant to Fed. R. Civ. P. Rule 4. The Knapps, rather than serving Defendants personally **as required by the rules**, attempted to serve Defendants by certified mail. The Knapps have not asked Defendants to waive service, and thus service via mail was ineffective.*".  Rule 4 of the Federal Rules of Civil Procedure, clearly states, **Rule 4 Summons**: (c) Service. (2) *By Whom*. Any person who is at least 18 years old and not a party may serve a summons and complaint.  The Docket will show that proper service of process was

performed pursuant to Rule 4 through a *Notice of Service of Process* and accompanying attached

unrebutted affidavits (*Id* at docket 9).

       Lastly, *Defendants Joint Memorandum of Law in Support to Dismiss* Fed. R. Civ. P.

12(b)(4) claim fails as Process was properly carried out through the Clerk of this Honorable

Court having issued Summons pursuant to Fed. R. Civ. P. 4(b) (*Id.* at dkt 5). Defendants

12(b)(5) claim fails as Service of Process was properly carried out as portrayed in the previous

paragraph (and again *Id*. at docket 9). The Defendants final claim pursuant to Fed. R. Civ. P.

12(b)(6) will be dispelled in the following response of their *Joint Memorandum in Support*.

## RESPONSES TO OPPOSING COUNSELS JOINT MEMORANDUM REGARDING MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

**Defendants' rhetorical argument ¶ I (Standard for 12(b)(6) Motion to Dismiss.)**: The

Complaint fails to articulate a cognizable claim for relief against either Hollerman or

Compass. To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a

complaint must establish sufficient facts that state a claim for relief that is plausible on its

fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine if a claim is sufficient, the

Court accepts and treats all the factual allegations as true and draws reasonable inferences

in favor of the plaintiff. *Paisley Park Enterprises, Inc. v. Boxill*, 361 F. Supp. 3d 869, 880

(D. Minn. 2019) (citing *Blankenship v. USA Truck, Inc*., 601 F.3d 852, 853 (8th Cir.

2010)). However, the Court must disregard legal conclusions couched as fact, and merely

reciting the elements of a cause of action is insufficient to survive a motion to dismiss.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Similarly, while the factual

allegations need not be detailed, they must demonstrate a "right to relief above the speculative level" and "state a claim to relief that is plausible on its fact." *Id*. at 555, 570.

The Complaint does not state a claim of action against Defendants. Here, the Complaint merely asserts claims on the unfounded legal conclusions that: (1) the contracts in question are securities; (2) Hollerman and Compass are banks within the meaning of Title 12; (3) Defendants breached unidentified contracts and fiduciary duties by refusing to follow the "orders" of Williams; and (4) the Knapps can act as prosecutors to enforce the criminal code—all of which are wrong on the law.

**Plaintiffs Response**:  Opposing Counsel has asserted that the Complaint does not establish sufficient facts to state a claim for relief that is plausible on its face. However, this assertion neglects the principles established by the Supreme Court regarding the leniency afforded to pro se litigants and the standard for assessing the plausibility of a claim.

Firstly, the claim that the Complaint merely asserts unfounded legal conclusions without stating a claim fails to recognize that, as per *Haines v. Kerner*, a pro se complaint is to be held to less stringent standards than formal pleadings drafted by lawyers. It should only be dismissed if it appears beyond a doubt that the plaintiff can prove no set of facts in support of their claim that would entitle them to relief.

Additionally, the allegation that factual allegations must rise above the speculative to state a claim for relief is consistent with *Bell Atlantic Corp v. Twombly*, yet the factual allegations in our Complaint do rise to this level. The complaint does not merely recite

the elements of a cause of action; it asserts concrete allegations against Hollerman and Compass, demonstrating a plausible right to relief.

Opposing Counsel also argues that the Court must disregard legal conclusions couched as fact. However, our Complaint distinguishes between factual assertions and legal conclusions, providing the Court with a factual framework that supports our legal theories. The allegations contained within the Complaint provide more than "labels and conclusions" and do a sufficient "factual enhancement" to cross the threshold of plausibility.

Furthermore, the assertion that Defendants did not breach any identified contracts or fiduciary duties is premature at this stage. *Trinsey v. Pagliaro* clarifies that statements of counsel in briefs are not sufficient for granting a motion to dismiss. The factual determinations and the existence or breach of fiduciary duties are determinations to be made upon a fuller record – potentially after discovery, which is precluded by dismissal at the pleading stage.

The reference to *Dwares v. City of New York* is particularly instructive. Liability under § 1983 can attach where a private individual collaborates with a state actor to violate a federal right. Our Complaint alleges facts which, taken as true, could plausibly suggest such collaboration between Defendants and state actors to the detriment of the Plaintiff's rights.

Most compellingly, the line of cases on void judgments (e.g., *Wahl v. Round Valley Bank*, *Milliken v. Meyer*) underscores the fundamental principle that a judgment rendered by a court without proper jurisdiction is void from the outset. The Complaint

raises serious jurisdictional challenges that must be addressed substantively and not brushed aside on procedural grounds.

Lastly, the significance of *Lujan v. Defenders of Wildlife* on standing cannot be overstated. Our Complaint articulates injuries that are concrete and particularized, directly traceable to Defendants' actions, and redressable by the Court, meeting the requirements for Article III standing.

In conclusion, Defendants' motion to dismiss under Rule 12(b)(6) should not be granted. The Complaint does allege sufficient factual content to allow the court to infer that the defendants are liable for the misconduct alleged, satisfying the standard set forth in *Iqbal* and *Twombly*. The additional latitude afforded to pro se litigants further supports the position that the Complaint should survive the motion to dismiss to allow full development of the factual record.

The principles set forth in the cases cited by the Plaintiff are not mere technicalities; they are fundamental protections enshrined in our legal system to ensure that every individual—regardless of legal representation—receives a fair opportunity to have their claims heard. The court is obliged to construe the pleadings such that substantial justice is served, and as detailed above, dismissal at this juncture would be inconsistent with that obligation.

Therefore, we respectfully request that the court deny the motion to dismiss and allow the case to proceed to discovery, where the Plaintiff will have the opportunity to substantiate the claims presented and to establish the Defendants' liability on the merits.

**Defendants' rhetorical argument ¶ II (Defendants were Not Properly Served):**   The Knapps'

attempt to serve Defendants via certified mail is insufficient. Under Fed. R. Civ. P. Rule 4, an

individual is served by "following state law for serving a summons…delivering a copy of the

summons and of the complaint to the individual personally; [or] leaving a copy of each at the

individual's dwelling or usual place of abode with someone of suitable age and discretion who

resides there." Fed. R. Civ. P. 4(e). Under Minnesota State law, personal service is completed

upon an individual "by delivering a copy to the individual personally or by leaving a copy at the

individual's usual place of a abode with some person of suitable age and discretion then residing

therein." Minn. R. Civ. P. 4.03(a) If a defendant is not served pursuant to the rules, the Court will

not hear the case. *See Printed Media Servs. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir.1993)

("If a defendant is improperly served, a federal court lacks jurisdiction over the defendant.").

The Knapps did not personally serve Defendants. Instead, the Knapps claim they served

Defendants by certified mail. However, neither the federal rule nor the Minnesota's state rule

allows for service by mail. Compare Fed. R. Civ. P. 5(b)(2)(C) (specifying that service of

documents other than pleadings may be done by "mailing it to the person's las known address");

Minn. R. Civ. P. 4.04(c)(2)(C)(ii) (allowing service of an individual outside of the United States

by "any form of mail requiring a signed receipt") Here, the Knapps chose not to personally serve

Defendants with a copy of the summons and complaint—instead choosing to attempt service via

certified mail. As such, service upon Defendants has not been perfected, and the Knapps'

Complaint must be dismissed.

**Plaintiffs Response**:  Plaintiffs respectfully submit this response in opposition to

*Defendants' motion to dismiss* based on alleged improper service of process. Defendants

contend that Plaintiffs' use of certified mail is an insufficient method of service under

Fed. R. Civ. P. 4 and Minnesota State law. This argument, however, is predicated on a misinterpretation of the flexibility provided by the federal rules and an overlook of Minnesota's provisions that accommodate service by mail under certain conditions.

I.     **The Permissive Language of Fed. R. Civ. P. 4(e) Allows for Discretion in Service Methods.**

Defendants' assertion relies on an unduly restrictive interpretation of Fed. R. Civ. P. 4(e), which states that service "**may**" be effected by following state law or by personal delivery. As defined by Cornell Law (https://www.law.cornell.edu/wex/may#), the term "**may**" suggests discretion and possibility rather than a mandate. By employing "may" rather than "**shall,**" Rule 4(e) does not compel exclusive adherence to state methods of service, thereby not precluding other methods of service that achieve the directive's intent: actual notice to the defendant.

II.     **Service by Certified Mail Is Not Precluded by Federal or State Provisions.**

Plaintiffs assert that there is no express prohibition against service by certified mail within either Minnesota State Law or the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(c)(2) stipulates that any person who is not a party to the action and is at least 18 years old may serve a summons and complaint. This rule provides a framework for service that is inclusive rather than exclusive. Furthermore, the Plaintiffs exercised due diligence by choosing a method of service, which would provide a reliable record of delivery, a fundamental principle that underpins the concept of due process.

III.     **Minnesota Court Rules Allow Service by Mail Under Certain Circumstances.**

Minnesota Court Rules - General Rules of Practice for the District Courts - Rule 355.02, Subd. 2, ***Service by U.S. Mail***, corroborates the Plaintiffs' position. It specifies that service by U.S. mail is permissible when conducted by a non-party who is at least 18 years of age. This provision further validates the Plaintiffs' use of certified mail as an acceptable method of service.

**IV.    The Purpose of the Service Rule Has Been Satisfied.**

The overarching purpose of service rules is to ensure that a defendant receives adequate notice of the action against them and is provided an opportunity to respond. In the case at hand, the Defendants' motion to dismiss based on improper service itself demonstrates actual notice of the complaint, as they have responded to the contents and the action therein. It would be contrary to the interests of justice to dismiss an action where the Defendants are indisputably aware of and have engaged with the proceedings, as evidenced by their present motion.  Plaintiffs believe that the Defendants are attempting to mislead this Honorable Court and deflect the real issue which is each of their defaults.

In light of the discretionary language in Fed. R. Civ. P. 4(e), the absence of a prohibition against service by mail in the federal rules, and the provisions of Minnesota Court Rules that accommodate service by U.S. mail, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss for insufficient service of process. Such a dismissal would serve only to delay the administration of justice without serving any substantive legal principle or purpose.

**Defendants' rhetorical argument ¶ III (Counts 1 and 2 Must Be Dismissed Because the Contracts and Documents Are Not "Securities", Defendants Are Not "Reserve Banks," and the Federal Reserve Act Does Not Provide a Private Right of Action.):**

The Knapps assert that the Contracts and Documents referenced in the Complaint are "collateral securities," and as securities, someone or something requires Defendants to exchange them with the Federal Reserve. (See Compl. at ¶¶ 9–12.) These so-called "collateral securities," and the fact that Defendants failed to exchange them with the Federal Reserve, appear to form the basis for the Knapps' Count 1 claim for breach of contract and Count 2 claim for breach of fiduciary duty. The Knapps attempt to rely on 12 U.S.C. § 412 to support their claims that the Contracts and Documents are collateral securities. (Compl. at ¶ 12.) The Knapps' reliance on section 412 is unavailing for at least three reasons: (1) the Contracts and Documents are *not* "collateral securities"; (2) Defendants are not "reserve banks" as defined by the Federal Reserve Act; and (3) section 412 does not provide a private right of action.

**A. The Contracts and Documents Are Not "Collateral Securities."**

The Knapps appear to assert that the Contracts and Documents are "negotiable instruments" and therefore qualify as "collateral securities" under the Federal Reserve Act because they are written and signed "unconditional promises to pay." (Compl. ¶¶ 18-47.) However, the Contracts and Documents described in the Complaint are not negotiable instruments or collateral securities.

A negotiable instrument is defined by the Uniform Commercial Code as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time…" Minn. Stat. § 336.3-104.

The Contracts and Documents are clearly not "unconditional promises to pay." Under the UCC, "[A] promise or order is unconditional unless it states (i) an express condition to payment." Minn. Stat. § 336.3-106(a). The Contracts and Documents contain numerous express conditions to payment, including mortgage financing contingencies, inspection contingencies, contingencies for the sale of the buyer's property, conditions requiring the successful closing of the sale(s), and other various conditions.

Even if the Contracts and Documents were negotiable instruments, which they are not, they still are not "collateral securities" subject to exchange for Federal Reserve Notes pursuant to 12 U.S.C. § 412. Section 412 provides that Federal Reserve banks may apply for notes in exchange for "collateral security" in the form of "notes, drafts, bills of exchange, or acceptances *acquired under section 10A, 10B, 13, or 13A of this Act [12 USCS §§ 92, 342–48, 349–352, 361, 372, or 373]*…" 12 U.S.C. § 412 (emphasis added).

The Contracts and Documents are not "notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A" of the Act. Those Sections of the Act specifically refer to the receipt of money, notes, checks, and drafts *by Federal Reserve banks, national banking associations, and depository institutions*. None of the individuals or entities involved are Federal Reserve banks, nor are they national banking associations or depository institutions.

Federal courts have rejected similar claims on numerous occasions. See, e.g., *Harp v. Police*, No. CV 23-2577, 2023 WL 5152625 (E.D. Penn. Aug. 10, 2023) (rejecting plaintiff's claims based on attempt to pass off fictitious "bill of exchange" consisting of

handwritten note containing "an array of financial buzzwords" as a valid legal tender for
her credit card debt and noting "other courts nationwide have rejected such 'frivolous'
attempts to satisfy a debt through a fictitious 'bill of exchange.'"). See also *Hennis v.
Trustmark Bank*, No. CIV.A.210CV20KSMTP, 2010 WL 1904860, *5 (S.D. Miss. May
10, 2010) ("From coast to coast, claims that debts have been paid under the redemption
theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as
frivolous.").

The Contracts and Documents are not collateral securities, promissory notes,
negotiable instruments, or indeed any kind of valid financial instrument.

**B. Defendants Are Not "Reserve Banks."**

Furthermore, the Knapps' claims fail because Hollerman and Compass are not
"reserve banks" within the meaning of Title 12. Title 12 defines a reserve bank as a
"Federal reserve bank." 12 U.S.C. § 221. Within section 412, the statute explicitly states
it applies to reserve banks, and contains no reference or language to individuals or private
citizens. See 12 U.S.C. § 412. The Knapps have failed to provide any facts to support an
assertion that Defendants are banks within the meaning of Title 12. Likewise, they have
failed to plead any facts that support their conclusory assertions that section 412 applies
to Defendants beyond their erroneous claims that the Contracts and Documents are
securities, and that section 412 applies. (See Compl. at ¶¶ 2, 12.).

**C. The Federal Reserve Act Does Not Provide a Private Right of Action.**

Finally, the Knapps' claims fail because they have no private right of action to
enforce the provisions of the Federal Reserve Act. 12 U.S.C. § 412 establishes the

process for federal reserve banks to apply for and exchange federal reserve notes. See 12

U.S.C. § 412. The language of the statute itself does not provide a private right of action

within its text. See id.

Numerous federal courts have held that the Federal Reserve Act does not provide

a private right of action. See, e.g., Ritchie v. Lisa Chan, No. 23-CV-1715-JO-BGS, 2024

WL 270108, at *2 (S. D. Cal. Jan. 23, 2024) ("The Federal Reserve Act is 'entirely

unrelated to consumer finance and does not provide any rights to a private citizen.'")

(quotation omitted); White v. Lake Union Ga Partners LLC, No. 1:23-cv-02852-VMC,

2023 WL 6036842, at *2 (N.D. Ga. July 14, 2023), Morton v. J.P. Morgan Chase & Co.,

No. 623CV04570BHHJDA, 2023 WL 8767544, at *5 (D.S.C. Nov. 21, 2023), Murphy v.

Capitol One, No. 4:23-CV-1120 HEA, 2023 WL 5929340, at *3 (E.D. Mo. Sept. 12,

2023). Indeed, the Complaint is void of any facts to support their conclusion that section

412 provides them a private right of action—because there are none.

The Knapps' claims of breach of contract and breach of fiduciary duty, which are

premised on violations of section 412, are frivolous and must be dismissed with

prejudice.

**Plaintiffs Response:**

In response to *Defendants' motion to dismiss* Counts 1 and 2 of the Complaint,

Plaintiffs respectfully submit this response in opposition. Defendants argue that the

Contracts and Documents at issue are not "securities," that Defendants are not "reserve

banks," and that the Federal Reserve Act does not provide a private right of action. We

contend that these arguments fail to address the substance of Plaintiffs' claims and misinterpret the applicable law.

## I.     The Contracts and Documents May Be Interpreted as "Securities" Under Broad Definitions and Existing Case Law.

While Defendants assert that the Contracts and Documents do not qualify as "collateral securities," this argument is a narrow interpretation of the term. Case law has recognized that the definition of securities can extend beyond the traditional instruments like stocks and bonds. In *Reves v. Ernst & Young*, 494 U.S. 56 (1990), the Supreme Court adopted a "family resemblance" test to determine whether a note is a security. Under this test, a note is presumed to be a security, but that presumption may be rebutted by a showing that the note bears a strong resemblance to one of several judicially crafted categories of non-security instruments. Plaintiffs contend that the Contracts and Documents have characteristics that may be consistent with securities when broadly interpreted, which should be further examined rather than dismissed at this stage.

## II.     Defendants' Status as "Reserve Banks" Is Not Conclusive in Evaluating the Nature of the Contracts and Documents.

Defendants' claim that they are not "reserve banks" within the meaning of Title 12 does not conclusively determine the nature of the Contracts and Documents. Plaintiffs do not assert that Defendants are reserve banks but that the transactions involving Defendants are governed by principles that can be analogously applied from banking regulations due to the financial and negotiable nature of the Contracts and Documents.

## III.     Private Right of Action Under the Federal Reserve Act.

While Defendants argue that the Federal Reserve Act does not provide a private right of action, this does not automatically preclude Plaintiffs from seeking remedies for breaches of contract and fiduciary duty. The private right of action under federal statutes has been found in instances where the statutory framework implies such a remedy and where plaintiffs have relied on statutory provisions to inform the obligations under a contract. In *Cort v. Ash*, 422 U.S. 66 (1975), the Supreme Court set forth a four-factor test for determining whether a private right of action can be implied from a federal statute, which can be a relevant consideration for this Court.

**IV.     Dismissal With Prejudice Is Premature.**

Defendants' request to dismiss the claims with prejudice is premature, especially given the complexity of the legal questions presented. Dismissal with prejudice is a drastic measure that should be reserved for instances where it is apparent that the complaint cannot be saved by any amendment. In the present case, Plaintiffs should be given an opportunity to amend the complaint, if necessary, to clarify the allegations concerning the nature of the Contracts and Documents and the applicability of statutory provisions.

Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss Counts 1 and 2. Plaintiffs' claims are not, on their face, frivolous, and they raise questions of law and fact that are deserving of further development and consideration. Dismissing these claims at the pleading stage would inappropriately prevent Plaintiffs from presenting a full and fair case.

**Defendants' rhetorical argument ¶ IV (The Knapps' Claim for Breach of Contract Must Be Dismissed for Failure to Identify Any Contract or Provision That Was Breached.):**

Plaintiffs' claim for breach of contract is also subject to dismissal for failure to identify any contact or contractual provision that has allegedly been breached.

The allegations of Count 1 merely re-hash the Knapps claim that they, through Williams, ordered Defendants to exchange the Contracts and Documents for Federal Reserve Notes, and that Defendants ignored these orders. (See Compl. ¶¶ 62-67.) The Knapps then conclude they have been damaged "due to this breach of contract." The Knapps do not identify any specific contract which they allege was breached, nor do they identify any contractual provision that was breached.

Even if the Knapps intended to refer to the Contracts and Documents referenced in the Complaint, those documents contain no provisions that require Defendants to follow the "orders" of Williams or attempt to exchange the Contracts and Documents for Federal Reserve Notes. To the contrary, the Buyer Representation Contract required Defendants to act in the Knapps' best interests "subject to any limitations imposed by law." (See Kouba Decl. Ex. B.) Defendants fulfilled this obligation by refusing to engage in an unlawful attempt to exchange the Contracts and Documents for Federal Reserve Notes.

The Knapps' claim for breach of contract is meritless and must be dismissed.

**Plaintiffs Response:**

Plaintiffs hereby submit this response in opposition to Defendants' motion to dismiss the claim for breach of contract. Defendants assert that Plaintiffs have failed to specify the contract or contractual provisions that were allegedly breached. Furthermore, Defendants reference the "*Kouba Declaration, Exhibit B*" to argue that they were obliged to act within legal limitations, claiming their refusal to exchange Contracts and Documents for Federal Reserve Notes was lawful. We contend that this argument is flawed and request the court to deny the motion for the following reasons.

**I.      Plaintiffs Have Sufficiently Identified the Nature of the Breached Contract.**

Defendants contend that Plaintiffs have failed to identify any specific contract or contractual provision that was breached. However, Plaintiffs have clearly alluded to a specific set of Contracts and Documents that form the basis of the commercial relationship between the parties. The Complaint's reference to Defendants' refusal to comply with Williams' instructions, as Plaintiffs' agent, is indicative of the existence and the nature of the contractual expectations between the parties.

**II.      The Alleged Breach Is Not Merely a Refusal to Follow "Orders."**

Plaintiffs' claim does not rest solely on Defendants' refusal to follow the "orders" of Williams but is based on the premise that such refusal constitutes a failure to fulfill contractual obligations that are implied within the nature of the Contracts and Documents. Defendants' literal interpretation of their obligations under the contract fails to consider the broader fiduciary and contractual responsibilities that may arise from the agency relationship as alleged.

**III.     The Kouba Declaration Should Be Treated as Hearsay.**

Defendants' reliance on the "*Kouba Declaration, Exhibit B*" is objectionable. As the exhibit is an unsworn declaration from the attorney of record, it should be considered hearsay and thus not admissible as evidence. *Trinsey v. Pagliaro* sets the precedent that statements of counsel in briefs or argument are not sufficient for purposes of granting a motion to dismiss or summary judgment. Affidavits or sworn declarations are required when presenting facts in support of a motion to dismiss. Therefore, Defendants' argument, relying on Exhibit B of the Kouba Declaration, cannot be considered in a motion to dismiss for failure to state a claim upon which relief can be granted.

**IV.     Requirement of Affidavits for Presenting Evidence.**

Under the rule set forth in *Trinsey v. Pagliaro*, assertions made in motions to dismiss must be supported by evidence that can be appropriately considered by the court. The Defendants have not presented any affidavits, sworn declarations, or admissible evidence that would allow the Court to consider their claims about the legality of their actions. Defendants' mere argument, without proper evidentiary support, does not meet the standard required to grant a motion to dismiss on the basis of factual contentions.

Plaintiffs have alleged facts which, taken as true, are sufficient to raise a claim of breach of contract that is plausible on its face. The Defendants' motion to dismiss relies on an inappropriately narrow interpretation of contractual obligations and an impermissible use of hearsay to dispute the factual allegations in the Complaint. The absence of any affidavits or appropriate evidentiary support renders Defendants' arguments insufficient to warrant dismissal at this stage. Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss the breach of contract claim and allow the case to proceed to discovery.

**Defendants' rhetorical argument ¶ V (The Knapps' Claim for Breach of Fiduciary Duty Must Be Dismissed for Failure to Identify Any Fiduciary Duty That Was Breached.):**

The Knapps' Count 2 claim for breach of fiduciary duty must be dismissed for failure to identify any legally cognizable duties that were breached. "To prevail on a claim of breach of fiduciary duty, a plaintiff must prove four elements: duty, breach, causation, and damages." *TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 434 (Minn. Ct. App. 2017). The Knapps fail to adequately plead the first two elements.

The Knapps claim Defendants "had a fiduciary duty to complete orders sent by attorney-in-fact Brandon Joe Williams," and they breached this alleged "duty" by refusing to follow Williams' orders. However, Defendants did not owe any fiduciary duty to Williams. *See Carlson*

*v. SALA Architects, Inc.*, 732 N.W.2d 324, 330 (Minn. Ct. App. 2007) ("A fiduciary relationship is characterized by a 'fiduciary' who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence.")

Assuming the Knapps intended to assert that Defendants breached their fiduciary duty to the Knapps, rather than to Williams, this claim likewise fails because Defendants did not owe the Knapps a fiduciary duty to exchange fictitious "collateral securities" for Federal Reserve Notes.

Real estate brokers owe fiduciary duties of good faith and loyalty, including the duty to communicate "all facts of which he has knowledge which might affect the principal's rights or interests." *See White v. Boucher*, 322 N.W.2d 560, 564 (Minn. 1982). Further, real estate brokers owe statutory fiduciary duties, including duties to act in the clients' best interests and carry out the clients' lawful instructions. Minn. Stat. § 82.67. For the reasons set forth above, the Knapps' instructions to exchange the Contracts and Documents for Federal Reserve Notes were not only unlawful, but impossible. By refusing to follow Williams' unlawful instructions, Defendants actually fulfilled their fiduciary duty to act in the Knapps' best interests.

The Knapps' claim for breach of fiduciary duty is frivolous and must be dismissed.

**Plaintiffs Response:**

Plaintiffs oppose Defendants' motion to dismiss Count 2, which alleges breach of fiduciary duty. Defendants argue that Plaintiffs have not adequately pled a fiduciary duty or a breach of such duty. However, Plaintiffs assert that Defendants had a fiduciary duty to them, which was breached, and that discovery will reveal the nature of the breach, particularly concerning the alleged instructions ("Orders") from attorney-in-fact, Brandon Joe Williams.

    **I.**     **Defendants Owe a Fiduciary Duty to the Knapps, Not to Their Agent.**

Plaintiffs clarify that the breach of fiduciary duty claim is directed at Defendants'
obligations to the Knapps, not to their agent, Williams. An agent acting on behalf of the
principals cannot be the recipient of the fiduciary duty owed by Defendants to the principals
themselves. The duties of loyalty and good faith that Defendants owed to the Knapps are well-
established in law and arise out of the real estate broker-client relationship as recognized in
*White v. Boucher.*

## II.    Discovery Will Elucidate the Breach of Good Faith and Loyalty.

Plaintiffs assert that the discovery process will provide evidence that Defendants
breached the fiduciary duties of good faith and loyalty. These allegations are not frivolous but
are grounded in the reasonable belief that Defendants' actions were contrary to the Knapps' best
interests. This belief will be substantiated through the discovery of communications and actions
taken by Defendants in response to Williams' instructions ("Orders").

## III.    Defendants Have Not Substantiated Their Claim of "Unlawful and Impossible" Instructions.

Defendants' assertion that the exchange of Contracts and Documents for Federal Reserve
Notes was "unlawful and impossible" is unsubstantiated within their memorandum. They have
failed to provide any legal argument or evidence to support this claim. Merely labeling
instructions as "unlawful" without providing any factual basis or legal framework is insufficient
to dismiss a claim for breach of fiduciary duty. Plaintiffs contest that Defendants'
characterizations of the instructions as unlawful are conclusory and challenge Defendants to
substantiate these claims.

## IV.    Defendants' Claim of Fulfilling Fiduciary Duties Is Premature.

Defendants' contention that by refusing to follow Williams' instructions they fulfilled
their fiduciary duty to act in the Knapps' best interests is premature and conclusory. Whether

Defendants acted in the Knapps' best interests is a factual determination that cannot be made at the pleading stage and should be reserved for a later stage in the proceedings after the facts have been fully developed through discovery.

Plaintiffs respectfully request the Court to deny Defendants' motion to dismiss Count 2 for breach of fiduciary duty. The claim is not frivolous and warrants further development through discovery. The Defendants' memorandum is based on conclusory statements without legal or factual substantiation, and dismissal at this stage would be inappropriate and contrary to the interests of justice.

**Defendants' rhetorical argument ¶ VI (The Knapps' Count 3 Claim for Civil Penalties under 12 U.S.C. § 504 Fails as a Matter of Law Because the Statute Does Not Apply to Defendants or Provide a Private Right of Action.):**

The Knapps' claim that Defendants are subject to a civil penalty pursuant to 12 U.S.C. § 504 is equally frivolous. In Count 3 of their Complaint, the Knapps assert that Defendants are subject to penalties under section 504 because of their purported violations of 12 U.S.C. § 412. As described above, section 412 does not apply to Defendants, nor does it provide a private right of action. Likewise, there is no private right of action under section 504. *See Harp*, 2023 WL 5152625, at *4 (finding that statute does not create a private right of action and dismissing pro se claim under 12 U.S.C. § 504 for failure to state a claim); see also *Murphy v. Capital One*, 2023 WL 5929340, at *3 (E.D. Mo. Sept. 12, 2023) (finding the imposition of penalties under the statute is the purview of federal officials, and no private right of action exists under section 504). The Knapps have failed to plead any facts to support they are federal officials able to assert civil penalties under section 504—to the contrary, they plead they are "persons residing in Hennepin County, Minnesota." (See Compl. at ¶ 3.)

The Knapps appear to be aware of the fact they cannot assert claims under section 504, but did so anyway, asserting that any civil money penalty under section 504 "is collected and deposited into the Treasury[,]" and therefore the Knapps "intend to send a copy of this complaint" to various federal and state agencies "for inspection and collection." (See id. at ¶ 80.) Despite their apparent knowledge that they do not have the right to bring such a claim, the Knapps still claim in Count 3 that Defendants are liable for the civil penalty. This claim is wrong and patently frivolous.

The Knapps' claim under section 504 also fails because Hollerman and Compass are not banks. Section 504 imposes penalties on "member banks" for a variety of misconduct. See 12 U.S.C. § 504. Under Title 12, "member banks" are defined as "any national bank, State bank, or bank or trust company which has become a member of one of the Federal reserve banks." 12 U.S.C. § 221. Nowhere in their Complaint do the Knapps assert that Defendants are banks—to the contrary, the Knapps allege that Compass is "a Foreign Limited Liability Company" and Hollerman is "a real estate broker." (Compl. at ¶¶ 5–6.) Furthermore, there are no facts that can be introduced to show that Defendants are banks.

The Complaint fails to assert any facts to support the Knapps' claim that they have a private right of action under 12 U.S.C. § 504, that Defendants are subject to 12 U.S.C. § 412 or § 504, or that Defendants are banks as defined in Title 12. Therefore, the Knapps' claim under 12 U.S.C. § 504 fails to state a claim upon which relief can be granted and must be dismissed with prejudice.

**Plaintiffs Response:**

Plaintiffs submit this opposition to Defendants' motion to dismiss Count 3 of the Complaint, which invokes 12 U.S.C. § 504. Defendants assert that this statute does not apply to

them and does not provide a private right of action. Plaintiffs maintain that the invocation of

banking statutes is relevant not to improperly impute bank status onto Defendants but to

reference the statutory framework informing the allegations of breach of contract and fiduciary

duty.

## I.      No Allegation That Defendants Are Banks Under Section 504.

Plaintiffs have not alleged, nor do they believe, that Defendants are banks as defined by

12 U.S.C. § 221 or subject to penalties under 12 U.S.C. § 504. The reference to banking statutes

within the Complaint is meant to provide context to the allegations regarding the nature of the

breaches of contract and fiduciary duty. It is not intended to assert that Defendants are banks or

that they are directly liable under these banking statutes.

## II.     Use of Banking Statutes to Inform Allegations of Breach.

The Plaintiffs' claim is grounded in the assertion that Defendants' actions, some of which

are comparable to those regulated under banking statutes, have led to breaches of fiduciary duties

and contracts. These references are intended to illustrate the standards of conduct from which

Defendants deviated. Through discovery, Plaintiffs will show that the standards and duties

breached are analogous to those outlined in banking laws.

## III.    Discovery to Elucidate Acts Comparable to Banking Statutes.

Plaintiffs will use the discovery process to demonstrate that Defendants engaged in acts

that, while not making them banks, are relevant under the standards set by banking statutes. The

invocation of these statutes in the Complaint is meant to demonstrate the seriousness of

Defendants' breaches in terms analogous to recognized financial regulations.

## IV.     Premature Dismissal Would Be Inappropriate.

Given the early stage of these proceedings, it would be inappropriate to dismiss the Plaintiffs' claim with prejudice based on a presumed misunderstanding of their use of banking statutes. Dismissal with prejudice is a severe sanction that should be reserved for instances where it is clear that no set of facts could be proven to support the Plaintiffs' claim. This is not the case here.

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss Count 3 of the Complaint. The Plaintiffs' references to banking statutes are not intended to suggest that Defendants are banks subject to 12 U.S.C. § 504 but to outline the framework within which Defendants' breaches of duty can be understood. As such, Plaintiffs' claims are neither frivolous nor unfounded and deserve further exploration through discovery.

**Defendants' rhetorical argument ¶ VII (Counts 4, 5, and 6 Must Be Dismissed Because the Knapps, as Private Citizens, Cannot Enforce Criminal Statutes.):**

The federal criminal claims set forth in Counts 4, 5, and 6 of the Complaint also fail as a matter of law. Counts 4, 5, and 6 of the Complaint assert three claims based on the federal criminal statutes contained in Title 18: Count 4 asserts a violation of 18 U.S.C. § 1956 for the laundering of monetary instruments; Count 5 asserts a violation of 18 U.S.C. § 2341 for the transportation of stolen securities; and Count 6 asserts a violation of 18 U.S.C. § 1345 for securities and commodities fraud. (See Compl. at ¶¶ 81–93.) As private citizens, the Knapps do not have standing to bring these claims. *See Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1062 (D. Minn. 2009) ("A private citizen does not have standing either to enforce federal criminal statutes or to have such statutes enforced.").

These claims also fail because there is no private right of action under these statutes. In determining if a statute provides a private right of action, the Court looks to congressional intent to see if a private right of action was contemplated by Congress. *Patil v. Minnesota State Univ., Mankato*, No. CIV. 12-1052 JRT/JSM, 2012 WL 7807608, at *13 (D. Minn. Dec. 10, 2012), aff'd, 533 F. App'x 698 (8th Cir. 2013). If such intent cannot be inferred from the statutory language, its structure, or some other source, there is no private right of action. Id. The presence of a criminal statute neither creates nor implies a corresponding private right of action. *See United States v. Wadena,* 152 F.3d 831, 845–46 (8th Cir. 1998).

The law is clear that only the United States attorney has the right to assert claims under Title 18: "[e]xcept as otherwise provided by law, each United States attorney, within his district, shall…prosecute for all offenses against the United States." 28 U.S.C. §547. There is no question that the Knapps cannot assert a private right of action under their Title 18 claims.

Even if the Knapps had a private right of action under Title 18 laws, which they do not, the Knapps assuredly do not have a private right of action under 18 U.S.C. § 1956 for laundering monetary instruments. First, nothing within the language of the statute itself provides the Knapps a private right of action. See 18 U.S.C. 1956; see also *Dubai Islamic Bank v. Citibank*, N.A., 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (finding that § 1956 does not expressly provide a private right of action). Second, courts have repeatedly found that § 1956 does not provide a private right of action, whether explicitly or implicitly. *See El v. Wells Fargo Bank*, No. 219CV02538JTFCGC, 2020 WL 1941322, at *3 (W.D. Tenn. Mar. 12, 2020) (citing numerous cases in various districts holding that § 1956 does not provide a private right of action).

Likewise, there is no private right of action for Count 5 of the Complaint. Count 5 asserts a claim under 18 U.S.C. § 2314 for transporting stolen securities. There is no language within §

2314 that provides a private right of action. See 18 U.S.C. § 2314. Furthermore, Courts in other districts have found no private right of action exists under § 2314. See Klein v. Sutro Bros. & Co., No. 69 CIV. 3693, 1970 WL 234, at *2 (S.D.N.Y. Jan. 26, 1970.), Lindsay v. Ahuja, No. 3:17CV01771 (JCH), 2017 WL 11707316, at *3 (D. Conn. Nov. 21, 2017); see also Carroll v. U.S. Equities Corp., No. 1:18-CV-667, 2020 WL 11563716, at *13 (N.D.N.Y. Nov. 30, 2020) (holding Plaintiff did not have a basis for implying a private right of action under § 2314).

There is also no private right of action for Count 6 of the Complaint. Count 6 asserts a claim under 18 U.S.C. § 1348 for securities and commodities fraud. Nothing in the language of § 1348 provides or implies a private right of action. See 18 U.S.C. § 1348. Like with the Knapps' other two Title 18 claims, courts have found that there is no private right of action under § 1348. See Barringer v. Ohio, No. 3:23 CV 1530, 2023 WL 8436427, at *2 (N.D. Ohio Dec. 5, 2023), Heath v. Root9b, No. 18-CV-01516-RBJ-KMT, 2019 WL 1045668, at *6 (D. Colo. Mar. 4, 2019), Butler v. Onewest Bank, FSB, No. 10–00300HG–KSC, 2010 WL 3156047, at *3 (D. Haw. Aug. 6, 2010).

Additionally, even assuming arguendo the Knapps had a private right of action, the Knapps failed to plead their assertions of fraud in Count 6 with particularity. When alleging fraud or mistake, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, the only assertions in the Complaint that Hollerman or Compass engaged in fraud is the Knapps' claim that fraud resulted "due to a lack of complete failure to disclose the terms and options of signing/indorsing above collateral securities." (Compl. at ¶ 91.) The Knapps' cursory assertion of fraud is not pled with sufficient particularity to comply with requirements of the federal rules. Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC, 949 F.3d 417, 421 (8th Cir. 2020) ("Conclusory allegations that a defendant's

conduct was fraudulent and deceptive are not sufficient to satisfy the Rule.") (quoting *Schaller Tel. Co. v. Golden Sky Sys.*, 298 F.3d 736, 746 (8th Cir. 2002). Therefore, Count 6 must be dismissed with prejudice.

In sum, the Knapps' claims under Title 18 fail to state a claim for which relief can be granted, because the Knapps do not have standing to prosecute federal criminal statutes and there are no private rights of action under the referenced statutes. The Knapps' Title 18 claims in Counts 4, 5, and 6 must be dismissed with prejudice.

**Plaintiffs Response:**

Plaintiffs hereby oppose Defendants' motion to dismiss Counts 4, 5, and 6 of the Complaint, which relate to alleged violations of federal criminal statutes. Defendants assert that Plaintiffs lack standing to enforce these statutes and that no private right of action exists under the referenced statutes. Plaintiffs contend that these counts serve not to invoke prosecutorial action but to demonstrate the legal framework within which Defendants' contractual and fiduciary breaches can be understood.

### I.      Plaintiffs Do Not Seek to Enforce Federal Criminal Statutes.

Plaintiffs clarify that Counts 4, 5, and 6 are not brought forth to invoke a private right of action or to enforce the federal criminal statutes themselves. Instead, these counts are alleged to provide a legal basis and context for Defendants' conduct, which Plaintiffs claim breached the standards of behavior expected under the civil obligations of contract and fiduciary duty. It is not Plaintiffs' intention to prosecute these matters but to indicate the gravity of the Defendants' alleged actions within a recognized legal context.

### II.      Legal Basis for Counts Within Civil Allegations.

Plaintiffs allege that the actions of Defendants, as described in the Complaint, have civil implications grounded in federal criminal law principles. Through discovery, Plaintiffs will show how Defendants' actions that allegedly breach contractual and fiduciary duties may parallel conduct regulated under the criminal statutes referenced. This parallel is intended to inform the Court of the character and possible consequences of Defendants' actions, lending support to the Plaintiffs' civil claims.

### III.     Counts Relate to Allegations of Breach of Contract and Breach of Fiduciary Duty.

Each count listed in the Complaint is connected to Plaintiffs' broader allegations of breach of contract and breach of fiduciary duty by the Defendants. The references to Title 18 are to contextualize the Defendants' alleged actions within the broader scope of wrongful conduct and are not intended to suggest that Plaintiffs seek a remedy that would be reserved for the Attorney General or other prosecutorial authorities.

### IV.     Plaintiffs' Allegations of Fraud Are Based on Defendants' Conduct.

Regarding the specific requirements for pleading fraud, Plaintiffs contend that the Complaint details Defendants' actions sufficiently to give notice of the particular grounds of the claim. Plaintiffs maintain that they have met the pleading standards by specifying the conduct that they allege amounts to fraud, thus satisfying the particularity requirement of Rule 9(b).

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss Counts 4, 5, and 6 of the Complaint. Plaintiffs' references to federal criminal statutes within these counts are intended solely to illustrate the civil implications of Defendants' actions and are not an attempt to assert prosecutorial powers. The relationship between the alleged civil breaches and the conduct described by the federal statutes is a matter for discovery and further proceedings, not for dismissal at this early stage. Plaintiffs seek the opportunity to

demonstrate, through discovery, the connections between Defendants' actions and the legal standards expressed in the cited federal statutes, as they relate to the alleged breaches of contract and fiduciary duties.

**Plaintiffs Conclusion:**

Plaintiffs submit this memorandum in opposition to Defendants' motion to dismiss the Complaint in its entirety. Defendants have characterized the Plaintiffs' claims as meritless, frivolous, and based on misguided legal advice, asserting that the Plaintiffs have failed to state a claim upon which relief can be granted. Plaintiffs maintain that their claims are well-founded, and that sufficient factual detail has been provided to survive a motion to dismiss.

**I.     Plaintiffs Have Pled Sufficient Facts Entitling Them to Relief.**

Contrary to Defendants' assertions, Plaintiffs have provided a detailed account of the facts that give rise to their claims. The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), which Plaintiffs have satisfied. The details regarding the contracts in question and the specific fiduciary duties Defendants are alleged to have breached have been outlined in the Complaint, providing Defendants with adequate notice of the claims and the grounds upon which they rest.

**II.     The Nature of Contracts and Fiduciary Duties.**

Plaintiffs assert that the contracts and documents at issue hold significance beyond their plain text and that discovery will reveal the full extent of the parties' obligations and Defendants' breaches thereof. Furthermore, the Complaint articulates how Defendants' actions—or lack thereof—have led to the alleged breach of fiduciary duties. These claims are anchored in both the

relationship between the parties and established legal principles regarding contractual and fiduciary obligations.

**III.     Claims Under Title 12 and Title 18.**

The invocation of statutes under Title 12 and Title 18 serves to illustrate the severity and character of Defendants' alleged actions and is not a standalone basis for the claims. Plaintiffs do not claim a private right of action to enforce criminal statutes but rather, assert that the statutes inform the obligations and potential misconduct implicated in their civil claims.

**IV.     Service of Process.**

Regarding service, Plaintiffs followed a method they believed to be reasonable and in line with federal rules. Any deficiency in service, if proven, should result in an order to effect proper service, not in dismissal with prejudice. Premature dismissal would deny Plaintiffs the opportunity to correct the service issue and would be disproportionate to the alleged service defect.

**CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss the Complaint. The Plaintiffs have presented more than mere labels and conclusions; they have provided factual allegations that, if proven, establish Defendants' liability. Dismissal with prejudice at this stage would be inappropriate and unjust, depriving Plaintiffs of the opportunity to prove their case on the merits.

Dated:  March 7th, 2024                              RESPECTFULLY SUBMITTED,

                                                                        BY:     /s/ *Preston Byron Knapp*
                                                                                      Preston Byron Knapp
                                                                                      Plaintiff, Pro Se

Pknapp5@gmail.com
(262) 496-8083

/s/ *Michelle Nichole Knapp*
Michelle Nichole Knapp
Plaintiff, Pro Se
Michelleknapp@gmail.com
(540) 931-5682

## Certificate of Service

Plaintiffs certify that on March 7th, 2024, the foregoing *PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS JOINT MOTION TO DISMISS* was filed with the Clerk of this Court via ECF. We further certify that, on the same date, the same document was served on Counsel listed below via electronic email.

Distribution:

Carl E. Christensen
Christensen Sampsel PLLC
305 Fifth Avenue North, Suite 375
Minneapolis, MN 55401
612-473-1200
carl@christensensampsel.com

Robert J. Kouba
Christensen Law Office PLLC
305 North Fifth Avenue, Suite 375
Minneapolis, MN 55401
612-823-4016
robert@clawoffice.com

Ryan Supple
Christensen Sampsel PLLC
305 North Fifth Avenue, Suite 375
Minneapolis, MN 55401
612-823-0188
ryan@christensampsel.com

Tessa A. Mansfield
Foley & Mansfield, PLLP
250 Marquette Avenue, ste. 1200
Minneapolis, MN 55401
612-338-8788
tmansfield@foleymansfield.com

Michael Kernstock
Foley Mansfield
250 Marquette Ave S, ste. 1200
Minneapolis, MN 55401
612-216-0224
mkernstock@foleymansfield.com