UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Preston Byron Knapp and Michelle Nichole Knapp,<br><br>Plaintiffs,<br><br>v.<br><br>Compass Minnesota, LLC and Daniel Phillip Hollerman,<br><br>Defendants. | Case No.: 0:24-cv-00100-SRN-DTS<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS** |

## INTRODUCTION

Defendants Daniel Philip Hollerman ("Hollerman") and Compass Minnesota, LLC ("Compass") (collectively, "Defendants") hereby move the Court, pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent authority, for an order imposing sanctions against Plaintiffs Preston Byron Knapp and Michelle Nichole Knapp (collectively, the "Knapps") for filing a patently frivolous complaint with claims that are clearly unwarranted under existing law or any nonfrivolous argument for extending, modifying, or reversing existing law.

The Knapps assert claims against Defendants that arise from a conspiracy theory that has been widely rejected by federal courts. The Knapps' Complaint further asserts claims that are patently frivolous because the statutes involved either do not apply to Defendants or do not provide a private right action. A brief review of case law from numerous jurisdictions across the United States would have indicated to the Knapps the frivolous nature of their claims. In fact, in their Opposition to Defendants' Motion to

Dismiss, the Knapps acknowledge that their claims under Title 12 and Title 18 are frivolous. Yet the Knapps chose to ignore the law and file their absurd suit, thereby burdening both Defendants and the Court. As a consequence, the Court should grant Defendant's Motion for Sanctions and impose sanctions sufficient to deter the Knapps from engaging in any future misuse of the judicial system.

## FACTUAL BACKGROUND

Hollerman is a real estate broker for Compass and is licensed in the State of Minnesota to sell real estate. (*See* Compl. ¶ 6, ECF No. 1.) The Knapps engaged Hollerman to both sell their current home and purchase another. (*See id.* at ¶ 9.) The Knapps executed various contracts related to the sale of their property and purchase of another. (*See id.* at ¶ 9.) During this process, the Knapps hired Brandon Joe Williams to act as their attorney-in-fact and review the contracts related to their real estate deals. (*See id.* at ¶ 10.)

The Knapps assert that the contracts and related documentation for the sale of their property and purchase of another (the "Contracts and Documents") are collateral securities that may be exchanged with the Federal Reserve for Federal Reserve notes. (*See id.* at ¶¶ 11–12, 17, 21–60.) The Knapps further assert Defendants are liable for not heeding the demands of their agent, Williams, to exchange the Contracts and Documents for Federal Reserve notes and to place the notes in escrow. (*See id.* at ¶¶ 61–78.)

On February 23, 2024, Defendants individually served copies of their Rule 11 Safe Harbor letters on the Knapps. (Declaration of Tessa Mansfield Hirte dated March 15, 2024 ("Hirte Decl.") Exs. A, B; Declaration of Robert J. Kouba dated March 15, 2024 ("Kouba Decl.") ¶ 4; Kouba Decl. Exs. G, H.) On February 24, 2024, Preston Knapp responded to

2

Defendants individually by letter, indicating the Knapps planned on continuing with their frivolous lawsuit. (*See* Hirte Decl. Ex. C; Kouba Decl. at ¶ 5; Kouba Decl. Ex. I.) On March 8, 2024, the Knapps filed a Response in Opposition to Defendants' Joint Motion to Dismiss. (Plfs.' Opp. to Defs.' Mot. to Dismiss, ECF No. 35.) In their response, the Knapps acknowledge they have no standing to assert claims under 12 U.S.C. § 504, 18 U.S.C. § 1956, 18 U.S.C. § 2341, or 18 U.S.C. § 1345, and that 12 U.S.C. § 504 is inapplicable to Defendants, because they are not banks. (*Id*. at 13, 23, 27, 28.)

## ARGUMENT

### I. Standard for Rule 11 Motion for Sanctions.

Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part:

(b) By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]

2. the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…

Fed. R. Civ. P. 11(b). Rule 11(c) provides for the imposition of sanctions in the event there is a violation of Rule 11(b).

"In determining whether this provision has been violated, a court 'must determine whether a reasonable and competent attorney would believe in the merit of an argument.'" *Welk v. GMAC Mortg.*, 850 F. Supp. 2d 976, 1000 (D. Minn. 2012) (quoting *Coonts v.*

3

*Potts*, 316 F.3d 745, 753 (8th Cir. 2003)). Rule 11 requires parties or their attorneys to conduct a reasonable inquiry of the factual and legal bases for their claims. *Coonts*, 316 F.3d at 753. "Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct, considering factors such as 'the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation.'" *Sharma*, 2022 U.S. Dist. LEXIS 47796, *46, 2 (quoting *Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551, (1991); *Pope v. Federal Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995)).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "[P]ro se litigants are subject to the same Rule 11 standards as licensed attorneys." *Sharma v. Crosscode, Inc.*, 2022 U.S. Dist. LEXIS 47796, *46, 2022 WL 816555 (D. Minn. March 17, 2022) (citing *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993)).

II. **Sanctions are Appropriate Because Although *Pro Se*, the Knapps Have Clearly Conducted Legal Research But Chose to Ignore the Voluminous Cases Rejecting Their Theories.**

Defendants' Motion for Sanctions should be granted because the Knapps are clearly capable of conducting legal research, as demonstrated by their citations to case law in their opposition to Defendants' Motion to Dismiss, but chose to ignore the voluminous case law indicating their claims are meritless and frivolous.

Although *pro se* litigants are held to less stringent pleading requirements, they are not immune to Rule 11 sanctions. *See Thiel v. First Federal Sav. & Loan Ass'n of Marion*, 646 F. Supp. 592, 596 (N.D. Ind. 1986). In *Thiel*, the Court found sanctions appropriate, in

4

part due to the fact that the plaintiff "demonstrated his ability to find a case and appreciate its significance…[and] refused to take the final step and abandon a cause of action that obviously has abused the judicial system…" *Id*. at 598.

Here, the Knapps have proven they can conduct legal research. Indeed, their response to Defendants' Motion to Dismiss includes citations to numerous cases from various jurisdictions. Despite their apparent ability to conduct such research, the Knapps have asserted various legal arguments that are completely unsupported by the law. The Knapps' willful refusal to acknowledge the frivolous nature of their claims despite their ability to research and read case law supports imposing sanctions.

### III. Sanctions are Appropriate Because the Knapps Have Acknowledged Their Claims are Improper.

Furthermore, the Knapps should be sanctioned because they have admitted their federal claims are frivolous but still refuse to dismiss the claims.

In their opposition to Defendants' Motion to Dismiss, the Knapps acknowledge they cannot assert claims under Title 12 against Defendants. (*See* Plfs.' Opp. to Defs.' Mot. to Dismiss at 14, 23.) Regarding their claim in Count three asserting violations of 12 U.S.C. § 504, the Knapps admit that the statute is inapplicable to Defendants because they are not banks. (*Id*.) Instead, the Knapps assert the claim is merely "meant to provide context to the allegations regarding the nature of the breaches of contract and fiduciary duty [and] not intended to assert that Defendants are banks or that they are directly liable under those banking statutes." (*Id*. at 23.) It is clear from this statement that the Knapps understand they cannot assert claims under section 504. Yet the Knapps refuse to dismiss their Count 3 claim for violation of section 504.

5

Similarly, the Knapps acknowledge they have no standing to assert claims under Title 18, including the claims set forth in Counts 4, 5, and 6 of their Complaint. (*Id.* at 27-28.) Despite asserting such claims against Defendants and seeking monetary relief from Defendants for these claims, the Knapps now claim Counts 4, 5, and 6 are "not brought forth to invoke a private right of action or to enforce the federal criminal statutes themselves. Instead, these counts are alleged to provide a legal basis and context for Defendants' conduct." (*Id.*) Even though the Knapps admit in their Opposition to Defendants' Motion to Dismiss that they cannot bring claims under federal criminal statutes, they are again refusing to dismiss such claims.

## IV.  Sanctions Are Proper Because Plaintiffs Seek to Use Their Complaint as a Fishing Expedition.

In their response to Defendants' Motion to Dismiss, the Knapps also illustrate they are using their Complaint as a fishing expedition.

A pleading must, among other things, contain "a short and plain statement of the grounds for the court's jurisdiction…[and] the claim showing the pleader is entitled to relief…" Fed. R. Civ. P. § 8(a). "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Discovery should not be used as a fishing expedition to determine if a plaintiff has a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 577 (2007) (dismissing complaint as it was merely a fishing expedition.)

The Knapps make various statements throughout their Opposition to Defendants' Motion to Dismiss that demonstrate they do not have a factual basis for their claims and

6

instead are hoping discovery will allow them to find facts to support their frivolous claims. For example, regarding their breach of fiduciary duty claim, the Knapps appear to admit they are merely fishing, asserting that "the discovery process will provide evidence that Defendants breached the fiduciary duties of good faith and loyalty." (Plfs.' Opp. to Defs.' Mot. to Dismiss at 20.) Similarly, with respect to their claim under 12 U.S.C. § 504, the Knapps assert they "will use the discovery process to demonstrate that Defendants engaged in acts that, while not making them banks, are relevant under the standards set by banking statutes."

These statements by the Knapps indicate that they are using their Complaint to engage in a fishing expedition and attempt to backfill their lack of facts through discovery. This type of conduct is improper and warrants sanctions to deter the Knapps from engaging in any future abuses of the judicial system.

### V.   Sanctions Are Appropriate Because All of the Knapps' Claims are Based on A Conspiracy Theory That Has Been Repeatedly Rejected by Federal Courts Throughout the United States.

All the claims in the Complaint appear to be based on a version of the pseudo-legal theory called the "redemption theory" and its off shoot, the "vapor money" theory, that have been soundly rejected by numerous federal courts.

> Followers of the redemption theory believe each citizen has a "private side" and a "public side." The theory provides that the government owns each citizen's public side or "straw man" by holding title to each citizen's birth certificate. By filing UCC-1 financing statements and their birth certificates in a state that accepts such filings, followers of this theory believe they can "redeem" their birth certificates. Redemption theorists view the redeemed birth certificate as an asset on which they place a value of up to $ 2 million and assert the U.S. Treasury Department acts as a clearinghouse for the funds. Under this theory, they then create money orders and sight drafts drawn on their Treasury Direct Accounts to pay for goods and services.

7

*United States v. Getzschman*, 81 Fed. Appx. 619, 620 (8th Cir. 2003). "Courts have characterized the redemption theory as 'implausible,' 'clearly nonsense,' 'convoluted,' and 'peculiar.'" *United States v. Weldon*, 2010 U.S. Dist. LEXIS 52856, *9-10 (E.D. Cal. May 4, 2010 (quoting *Bryant v. Washington Mutual Bank*, 524 F.Supp.2d 753, 760 (W.D.Va. 2007), aff'd, 282 Fed.Appx. 260 (4th Cir. 2008); *United States v. Allison*, 264 Fed.Appx. 450, 452 (5th Cir. 2008)).

Similar to the redemption theory, under the "vapor money," proponents believe "that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010).

> Bolstering this argument (at least for its adherents) is the fact that once received, banks typically deposit promissory notes into their own accounts and list them as assets. Then, according to the vapor money theory, the bank purports to lend the 'money' that was "created" by the citizen's signature back to the citizen-borrower.

*Id.*

The Knapps' Complaint appears to rely on a form of the "vapor money" theory, under which the Knapps apparently believe that by "indorsing" certain contracts, documents, and bills (including the Contracts and Documents at issue in this case) using specific language and their signatures, such documents constitute "promissory notes" (if the document includes a promise to pay) or "bills of exchange" (if the document includes an order to pay), which can then be used as legal tender to purchase property or satisfy debts. (*See* Compl. ¶¶ 11-60.)

8

The Knapps' theory is based on a misinterpretation of 12 U.S.C. § 412. That statute states:

> *Any Federal Reserve bank* may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. *The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act* [12 USCS §§ 92, 342–348, 349–352, 361, 372, or 373]…

(emphasis added). The Knapps conveniently ignore two key provisions in the statute.

First, the first four words of section 412 clearly indicate it only applies to "Any Federal Reserve bank." Clearly, none of the parties involved in this case, including Compass, Hollerman, or the Knapps, are Federal Reserve Banks. As such, 12 U.S.C. § 412 is inapplicable on its face.

Second, the last sentence of section 412 indicates that the documents that may be offered as collateral security must be "notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A" of the Act. Those Sections of the Federal Reserve Act specifically refer to the receipt of money, notes, checks, and drafts *by Federal Reserve banks, national banking associations, and depository institutions*. Again, none of the individuals or entities involved are Federal Reserve banks, nor are they national banking associations or depository institutions.

Claims arising under the redemption and "vapor money" theories have been repeatedly rejected by federal courts around the country. *See McLaughlin*, 726 F. Supp. 2d at 214 ("[T]hese theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years."); *Hennis v. Trustmark Bank*, 2010 U.S. Dist.

9

LEXIS 45759, *16 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous.").

For example, in *Harp v. Police*, 2023 U.S. Dist. LEXIS 139418, *2 (E.D. Penn. Aug. 10, 2023), the plaintiff attempted to pay her credit card bill by submitting to the defendant credit union a "bill of exchange" that "was fashioned from the Enclosure Form sent with her credit card statement, on which [the plaintiff] indicated that the 'Amount Enclosed' was $5,480.46, with notations stating 'ACCEPTED,' 'PAY TO BEARER,' 'PAY WITH INTEREST,' and 'PAY ON DEMAND.'" Along with the "bill of exchange," the plaintiff sent a letter stating:

> I hereby instruct the Chief Financial Officer John La Rosa to apply the Principal's balance to the Principal's account . . . for each and every billing cycle for set off. I also instruct the CFO to communicate in writing within five (5) business days of completed duties and instructions . . .
>
> I have performed my contractual obligations by remitting payment via bill of exchange as collateral security and legal tender.

*Id.* at *2–3. When the credit union refused to accept the "bill of exchange," the plaintiff sued the credit union asserting claims for breach of contract, "violation of security rights leading to security fraud," breach of fiduciary duties, breach of trust, and violations of the Federal Reserve Act. *Id.* at *4.

The court held that the "bill of exchange" presented by the plaintiff clearly was not valid legal tender. *Id.* The court explained:

> In other circumstances, a bill of exchange is certainly a valid financial instrument, often used to keep track of debt in international trade. … But here, rather than a legally enforceable document noting an existing debt that PFFCU owed to her, Harp simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to PFFCU as valid legal

tender for her credit card debt. This is not a valid financial instrument, and other courts nationwide have rejected such 'frivolous' attempts to satisfy a debt through a fictitious 'bill of exchange.'

*Id.* at *8–9. *See also Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 760 (W.D. Vir. 2007) (rejecting plaintiff's claims as "clearly nonsense in almost every detail," where plaintiff attempted to exchange a "Bill of Exchange" and financing statements that purported to register a "security interest" in "the fictitious entity that was created by her birth certificate and other government documents" for funds from the U.S. Treasury to satisfy her mortgage loan, and noting that the plaintiff "did not tender payment, but rather a worthless piece of paper."); *Arau v. Rocket Mortgage, LLC*, 2023 U.S. Dist. LEXIS 109814, *2-4 (N.D. Cal. Jun. 26, 2023) (rejecting plaintiff's claims as "lack[ing] any legal foundation," where plaintiff asserted he discharged mortgage debt by sending "bonds," which consisted of "a series of incomprehensible documents with quasi-legal terminology" to the Depository Trust and Clearing Corporation in New York, which the DTCC were allegedly required to exchange for funds that would then be used to discharge his mortgage debt); *Brown v. Home State Bank*, 2023 U.S. Dist. LEXIS 215814 (E. D. Wisc. Dec. 5, 2023) (rejecting claims under Federal Reserve Act based on allegations that the plaintiff gave the defendant "a collateral security accompanied with the proper tender pursuant to the Federal act section 16 par 2").

Not only have claims brought under these theories been resoundingly rejected by federal courts, but their proponents have been prosecuted for criminal offenses. *See, e.g., United States v. Getzschman*, 81 Fed. Appx. 619, 620 (8th Cir. 2003) (affirming defendants' convictions for various crimes including conspiracy to make and pass false or

fictitious financial instruments based upon their attempts to use money orders and sight drafts drawn on the Department of Treasury to pay for the goods); *United States v. Allison*, 264 Fed. Appx. 450, 451 (5th Cir. 2008) (upholding defendant's conviction for corruptly interfering with the administration of the Internal Revenue Code and willfully making and subscribing false documents based on defendant's act of mailing "municipal employees various papers purporting to be 'bills of exchange' and, when he received no response, … report[ing] to the IRS transfers of money or debt in the accounts maintained by the treasury.").

The Knapps must be sanctioned for failing to conduct a reasonable inquiry into the merits of their case and initiating this lawsuit in bad faith. *Coonts*, 316 F.3d at 753. The Knapps could have readily determined the frivolous nature of their Complaint by conducting a brief review of the statutes in question and the numerous cases rejecting similar claims. The Knapps either failed to conduct such a review or willfully chose to ignore the voluminous case law refuting their legal claims. Because the Knapps' claims are clearly frivolous and based on a nonsensical conspiracy theory, Defendants' Motion for Sanctions should be granted.

## VI. Sanctions Are Appropriate Against the Knapps Because Every Count of the Complaint Violates Rule 11.

Looking beyond the frivolous theory upon which the Knapps' Complaint is based, each of the individual claims also violate Rule 11(b), because they fail to set forth any cognizable claims for relief. The following sections discuss the Knapps' Complaint claim-by-claim and establish that the claims are not supported by existing law or any reasonable argument for the extension or modification of existing law.

### A. Count 1: Breach of Contract.

In Count 1, the Knapps assert a claim for breach of contract purportedly based upon Defendants' refusal to follow the "orders" of Williams and exchange the agreements at issue for Federal Reserve Notes. (*See* Compl. ¶¶ 61–71.) This claim is without any legal merit because the Knapps do not identify any specific contract they allege was breached, nor do they identify any contractual provision that was breached.

Even assuming they intend to refer to the Buyer Representation Contract and Listing Contract, there are no provisions in either contract that would require Hollerman or Compass to follow the "orders" of Williams or attempt to exchange the agreements referenced in the Complaint for Federal Reserve notes. (*See* Kouba Decl. in Supp. Mot. to Dismiss Exs. A–D, ECF No. 13–1.)

The Buyer Representation Contract expressly lists the obligations of the Broker, Compass, and includes the duty to "act in Buyer's best interest at all times, subject to any limitations imposed by law or dual agency…" (Kouba Decl. Ex. B at 1 ¶¶ 11–14).) These obligations do *not* include the obligation to follow "orders" from a third party such as Williams, or to attempt to exchange a purchase agreement or similar document for Federal Reserve notes.

More importantly, Hollerman could not possibly follow the Knapps' instructions to exchange the agreements for Notes, because such an exchange is impossible. As explained more fully above, the Knapps' claims related to the exchange of "collateral securities" for Federal Reserve notes are premised on a widely discredited conspiracy theory.

13

Because the Knapps' claim for breach of contract is frivolous, sanctions are appropriate.

### B. Count 2: Breach of Fiduciary Duty.

Count 2 asserts a claim for breach of fiduciary duty. The Knapps specifically allege, "HOLLERMAN received proper Limited Power of Attorney outlining fiduciary duties of Brandon Joe Williams," and that Defendants "had a fiduciary duty to complete orders sent by attorney-in-fact Brandon Joe Williams." (Compl. ¶¶ 73–74.) The Knapps further claim Defendants breached this duty by refusing to comply with Williams' orders. (*Id.* at ¶¶ 75–78.)

Real estate brokers owe fiduciary duties of good faith and loyalty, including the duty to communicate "all facts of which he has knowledge which might affect the principal's rights or interests." *See White v. Boucher*, 322 N.W.2d 560, 564 (Minn. 1982). Additionally, real estate brokers owe the following statutory fiduciary duties:

> Loyalty-broker/salesperson will act only in client(s)' best interest.
> Obedience-broker/salesperson will carry out all client(s)' lawful instructions.
> Disclosure-broker/salesperson will disclose to client(s) all material facts of which broker/salesperson has knowledge which might reasonably affect the client's use and enjoyment of the property.
> Confidentiality-broker/salesperson will keep client(s)' confidences unless required by law to disclose specific information (such as disclosure of material facts to Buyers).
> Reasonable Care-broker/salesperson will use reasonable care in performing duties as an agent.

Minn. Stat. § 82.67, subd. 3(2).

Notably, these duties only require the broker to carry out the clients' *lawful* instructions. *Id.* For the reasons set forth above, Williams and/or the Knapps' instructions to exchange the agreements referenced in Complaint for Federal Reserve notes were not

14

only unlawful but also impossible. By refusing to follow Williams' unlawful instructions, Defendants *actually* fulfilled their fiduciary duty to act in the Knapps' best interests.

The Knapps' claim for breach of fiduciary duty is not warranted under the law, and thus sanctions are appropriate.

### C. Count 3: 12 U.S.C. § 504 (Civil Money Penalty – Federal Reserve Act).

Count 3 asserts a claim for a civil money penalty pursuant to 12 U.S.C. § 504. This rule is part of the Federal Reserve Act and imposes a civil penalty of no more than $5,000 per day for violations of sections 22, 23A, or 23B of the Act by member banks and "any institution-affiliated party" within the meaning of 12 U.S.C. § 1813(u). Pursuant to 12 U.S.C. § 221, a "member bank" means "any national bank, State bank, or bank or trust company which has become a member of one of the Federal reserve banks." No possible interpretation of this term could include Defendants.

Even if a court concluded Defendants were somehow a "member bank," courts have held that the Federal Reserve Act, including 12 U.S.C. § 504, does not provide a right of action to private citizens. *See Ritchie v. Lisa Chan*, 2024 U.S. Dist. LEXIS 12159, *5 (S. D. Cal. Jan. 23, 2024) ("The Federal Reserve Act is 'entirely unrelated to consumer finance and does not provide any rights to a private citizen.'" (quoting *Brown,* 2023 U.S. Dist. LEXIS 215814 at *5-6).); *White v. Lake Union Ga. Partners LLC*, 2023 U.S. Dist. LEXIS 184024, *5 (N. D. Ga. Jul. 14, 2023) ("Courts have therefore rejected attempts by private individuals to bring claims under [12 U.S.C. § 504]."); *Lillacalenia v. Kit Fed. Credit Union*, 2014 U.S. Dist. LEXIS 110895, *4 (W. D. Ken. Aug. 11, 2014) ("[Plaintiff] fails to show that he, as an individual, may maintain an action under either of these civil penalty

15

provisions as any penalty imposed under §§ 504 and 505 shall be assessed and collected by either the Comptroller of the Currency or the Board…").

Furthermore, the Knapps concede they have no standing to bring their claim under 12 U.S.C. § 504. In their Complaint, the Knapps acknowledge that any authority to impose a civil penalty under § 504 is within the purview of the federal government, claiming "[t]he Civil Money Penalty is collected and deposited into the Treasury, so plaintiffs intend to send a copy of this complaint to the SEC, Federal Reserve, Office of the Comptroller, Minnesota Dept of Commerce as well as the Treasury for inspection and collection." (EDF No. 1 at ¶ 80.) It is clear the Knapps sole purpose for bringing this claim is to harass Defendants and increase their litigation costs.

Because Defendants are not "member banks" as defined by the Federal Reserve Act, and there is no private right of action under 12 U.S.C. § 504, the Knapps claim is unsupported by the law, and sanctions are warranted.

### D. Counts 4, 5, and 6: 18 U.S.C. § 1956 (Laundering of Monetary Instruments), 18 U.S.C. § 2314 (Transportation of Stolen Securities), and 18 U.S.C. § 1348 (Securities and Commodities Fraud).

Lastly, Counts 4, 5, and 6 allege violations of criminal statutes, which the Knapps have no standing to assert. Indeed, these counts all allege claims related to Title 18 of the United States Code—the title reserved for crimes and criminal procedure. As private citizens, the Knapps do not have standing to enforce federal criminal statutes. *See Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1062 (D. Minn. 2009) ("A private citizen does not have standing either to enforce federal criminal statutes or to have such statutes enforced."). Only the United States Attorney has power to prosecute under these laws. *See* 28 U.S.C. §

16

547 ("Except as otherwise provided by law, each United States attorney, within his district, shall…prosecute for all offenses against the United States."). As described in more detail in Defendants' Joint Memorandum of Law in Support of their Motion to Dismiss, numerous federal courts in the United States have rejected attempts by pro se plaintiffs to assert these very claims in civil court. (*See* Defs.' Mem. in Supp. Mot. to Dismiss, ECF No. 12, pp. 14–17.)

Counts 4, 5, and 6 of the Complaint are unsupported by the law. Sanctions are appropriate against the Knapps for these counts.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Sanctions, impose a sanction against the Knapps sufficient to deter future misconduct, and award Defendants' reasonable attorney fees, costs, disbursements, and other expenses incurred in having to defend this frivolous action.

**FOLEY & MANSFIELD, PLLP**

Dated:  March 20, 2024

*/s/ Tessa Mansfield Hirte*
Tessa Mansfield Hirte (#0396591)
Michael S. Kernstock (#0398879)
250 Marquette Avenue, Suite 540
Minneapolis, MN  55401
Telephone: (612) 338-8788
tmansfield@foleymansfield.com
mkernstock@foleymansfield.com

*Attorneys for Defendant Compass Minnesota, LLC*

17

**CHRISTENSEN SAMPSEL PLLC**

Dated: March 20, 2024              */s/ Carl E. Christensen*_____
Carl E. Christensen (#350412)
Ryan P. Supple (#395838)
Robert J. Kouba (#398428)
305 North Fifth Avenue, Suite 375
Minneapolis, MN  55401
Telephone: (612) 473-1200
carl@christensensampsel.com
ryansupple@christensensampsel.com
robert@christensensampsel.com
*Attorneys for Defendant*
*Daniel Hollerman*