## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Preston Byron Knapp and Michelle Nichole Knapp, <br><br> Plaintiffs, <br><br> v. <br><br> Compass Minnesota, LLC, and Daniel Philip Hollerman, <br><br> Defendants. | Case No. 24-cv-00100 (SRN-DTS) <br><br><br> **MEMORANDUM, OPINION AND ORDER** |

Plaintiffs Preston Byron Knapp and Michelle Nichole Knapp, 2624 North Saunders Lake Drive, Minnestrista, MN 55364, pro se.

Michael Kernstock and Tessa A. Mansfield, Foley & Mansfield, PLLP, 250 Marquette Ave S, Suite 1200, Minneapolis, MN 55401, for Defendant Compass Minnesota, LLC.

Carl E. Christensen, Robert J. Kouba, and Ryan Supple, Christensen Sampsel PLLC 305 North Fifth Avenue, Suite 375, Minneapolis, MN 55401 for Defendant Daniel Philip Hollerman.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendants Compass Minnesota, LLC ("Compass") and Daniel Philip Hollerman's ("Hollerman") (collectively, "Defendants") Motion to Dismiss the Complaint [Doc. No. 10]; Plaintiffs Preston Byron Knapp and Michelle Nichole Knapp's (the "Knapps" or "Plaintiffs") Motion to Compel Communication with Attorney-in-Fact [Doc. No. 22]; the Knapps' Motion for Default Judgment as to Hollerman [Doc. No. 27]; and the Knapps' Motion for Default Judgment as to Compass [Doc. No. 30].

1

Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** Defendants' Motion to Dismiss the Complaint, and **DENIES** Plaintiffs' motions.

## I.      BACKGROUND

Plaintiffs' Complaint ("Compl.") [Doc. No. 1] concerns Plaintiffs' and Defendants' involvement in a real property transaction. Plaintiffs argue that Defendants breached their contract with and fiduciary duties towards Plaintiffs and engaged in other malfeasance by refusing to follow the instructions of Brandon Joe Williams ("Williams"), Plaintiffs' "attorney-in-fact," to have "collateral securities exchanged for Federal Reserve Notes and to have those notes placed in escrow." (Compl. ¶¶ 9-17.) Defendants argue that Plaintiffs' complaint fails to plausibly allege a breach of contract and/or a breach of fiduciary duty, and that they have no legal responsibility to communicate with Williams.

### A.      Factual Background

The Knapps reside in Hennepin County, Minnesota. (Compl. ¶ 1). Compass is a national real estate sales company operating in Minnesota, and Hollerman works as an agent for them. (Def's Mot. to Dismiss Br. [Doc. No. 12] at 2.) The parties do not dispute that the Knapps engaged Hollerman to sell their then-current home as well as purchase a new home. (*Id.*)

The parties executed several agreements as part of this engagement. (*See* Declaration of Robert J. Kouba ("First Kouba Decl.") [Doc. No. 13], Exs. A-D (together,

the "Contracts".)[1] Hollerman and the Knapps executed a buyer representation contract on

August 29, 2023, granting Hollerman the exclusive right to "locate and/or to assist in

negotiations for the purchase, exchange of or option to [purchase] property located in

Minnesota at a price and with terms acceptable to Buyer[.]" (First Kouba Decl., Ex. B (the

"Buyer Representation Contract") at 1.) The parties also executed a listing contract on

September 15, 2023, granting Hollerman the exclusive right to sell their home at 2624

North Saunders Lake Drive in Minnetrista, Minnesota. (First Kouba Decl., Ex. A (the

"Seller Representation Contract").) Under representation, the Knapps signed a purchase

agreement on August 29, 2023 for a property at 9350 Forest Road in Cannon Falls,

Minnesota for $2,450,000. (First Kouba Decl., Ex. D (the "Purchase Agreement").) The

Knapps later accepted an offer for their North Saunders Lake Drive property in the amount

of $1,150,000 on October 10, 2023. (First Kouba Decl., Ex. C (the "Sale Agreement").)

---

[1] Plaintiffs argue that the Court may not consider these documents for purposes of this motion because they are "hearsay" as an "unsworn declaration from the attorney of record[.]" (Pl. Mot. to Dismiss Br. [Doc. No. 35] at 17.)

Plaintiffs' argument is unavailing. In deciding a motion to dismiss, the Court may also consider documents "necessarily embraced by the pleadings, including documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings[,]" as such documents "are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1150 (8th Cir. 2012) (internal citations omitted). The Contracts are necessarily embraced by the pleadings, despite Plaintiffs' failure to attach them to the Complaint. As such, the Court will consider them.

Plaintiffs allege that "during [the] process" of these property transactions, they hired

Williams to "review documents."[2] (Compl. ¶ 10.) Plaintiffs allege that "[d]uring review,

[Williams] noticed that some of the instruments were collateral securities" allegedly

---

[2] The Court takes judicial notice that Brandon Joe Williams is the principal of "Williams & WILLIAMS Law Group," ("WWLG") an entity that concedes that it engages in the unlicensed practice of law as a matter of course. (*See* Pl's Mot. to Compel, Exs. A and B [Doc. Nos 23 and 24]; *Questions and Answers,* Williams & WILLIAMS Law Group, https://www.williamsandwilliamslawfirm.com/questionsandanswers (last visited: May 29, 2024) (hereinafter, "WWLG, *Questions and Answers*") (stating, for instance, that "[I am a]bsolutely not [licensed], nor will I ever be."); *see generally About,* Williams & WILLIAMS Law Group, https://www.williamsandwilliamslawfirm.com/about (last visited: May 29, 2024) ((hereinafter, "WWLG, *About*").

According to their website, WWLG endorses beliefs concerning the U.S. legal system consistent with the Sovereign Citizen movement. (*See* WWLG, *Questions and Answers*; *see also* Caesar Kalinowski IV*, A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 157-71 (2019) (hereinafter, "Kalinowski, *A Legal Response*"; *The Sovereigns: A Dictionary of the Peculiar*, Intelligence Report, Southern Poverty Law Center, https://www.splcenter.org/fighting-hate/intelligence-report/2010/sovereigns-dictionary-peculiar (Aug. 1, 2010) (hereinafter, "A Dictionary of the Peculiar"). As this Court has previously explained:

> As explained by the Federal Bureau of Investigation, the "Sovereign Citizens" movement is based on a theory where they view the "USG [U.S. Government] as bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back U.S. currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral. Members of this movement think that the federal government has tricked the populace into becoming U.S. citizens by entering into 'contracts' embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.

*United States v. Graham*, Case No. 19-cr-185(2) (SRN/KMM), 2020 WL 614808 at *3 n.1 (D. Minn. Feb. 10, 2020) (cleaned up and citations omitted).

"exchangeable with the Federal Reserve pursuant to 12 U.S.C. § 412." (*Id.* ¶¶ 11-12.) Williams then "rescinded the original blank negotiation unknowingly done by plaintiffs[;]" "replaced the previously blank indorsements with special/restrictive indorsements via a Limited Power of Attorney[;]" and "informed other indorsing parties that they have the option to claim the collateral securities that were indorsed by them[;]" (*Id.* ¶¶ 13-15.) When "[n]o interest in claiming those collateral securities was expressed by any party besides plaintiffs[,]" Williams "gave orders to have those collateral securities exchanged for Federal Reserve Notes and to have those notes placed in escrow." (*Id.* ¶¶ 16-17.) The "collateral securities" in question appear to be various contract documents such as purchase agreements and listing contracts, which are allegedly either "promissory note[s]" and thus "unconditional promise[s] to pay" (*Id.* ¶¶ 18-47) or "bill[s] of exchange" and thus "unconditional order[s] to pay." (*Id.* ¶¶ 47-60.)

Plaintiffs allege that Hollerman "ignored orders to have collateral securities exchanged for Federal Reserve Notes" on instruction from Compass lawyers. (*Id.* ¶¶ 65-67.) For this reason, "plaintiffs were not able to complete the purchase of the requested home." (*Id.* ¶ 68.)

### B. Procedural History

On January 12, 2024, Plaintiffs filed a pro se complaint in this Court, seeking damages for breach of contract and fiduciary duties, a "civil money penalty" pursuant to the Federal Reserve Act, 12 U.S.C. § 504, and containing allegations that Defendants engaged in "laundering of monetary instruments" under 18 U.S.C § 1956; "transportation

of stolen securities under 18 U.S.C. § 2314; and "securities and commodities fraud" under 18 U.S.C. § 1348. (*Id.* ¶¶ 61-93.)

Plaintiffs filed a notice of service of process on February 2, 2024, showing that Joey Kimbrough—another individual associated with WWLG—had sent copies of the Complaint to Defendants on January 16, 2024 via certified United States Postal Service mail, with Hollerman allegedly receiving his copy on January 22, 2024 and Compass allegedly receiving its copy on January 25, 2024. (Notice of Service of Process [Doc. No. 9].) The certified mail receipt for the delivery to Hollerman was unsigned, while the certified mail receipt for the delivery to Compass was signed.

On February 15, 2024, Defendants' counsel contacted Preston Knapp by email to set up a time to meet and confer concerning the Complaint. (Declaration of Tessa Mansfield Hirte ("Hirte Decl.") [Doc. No. 37], Ex. C, at 9; *see also* Declaration of Robert J. Kouba ("Second Kouba Decl.") [Doc. No. 38], Ex. F at 5.) Defendants refused to recognize Williams as Plaintiffs' attorney-in-fact, although eventually agreed to speak with Preston Knapp while Williams was also on the phone. (Hirte Decl. at 4-8; Second Kouba Decl. at 1-4.) The parties also disagreed about the calculation of Defendants' deadlines to respond. (*Id.*) On February 20, 2024, the parties—as well as Williams and Kimbrough—met and conferred via telephone, but were unable to reach a resolution of the Complaint. (Hirte Decl. ¶¶ 16, 25.)

In lieu of an answer, Defendants filed a motion to dismiss on February 20, 2024, seeking to dismiss the Complaint for insufficient process and service of process under Fed. R. Civ. P. 12(b)(4–5) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6) [Doc.

No. 10.] In their briefing in support of their motion to dismiss, however, Defendants "generally deny the allegations set forth in the Complaint[,]" except for certain facts that they do not dispute. (Defs' Mot. to Dismiss Br. [Doc. No. 12] at 2.)

On February 22, 2024, Plaintiffs filed a motion to compel communication with Williams as the Knapps' "attorney-in-fact" [Doc. No. 22] and motions for a default judgment against each defendant [Doc. Nos. 27 and 30].

## II.    DISCUSSION

### A.    Plaintiffs' Motions For A Default Judgment

Plaintiffs argue that both Hollerman and Compass were properly served by certified mail on January 22 and January 25, 2024, respectively, that Hollerman's counsel appeared on his behalf on January 18, 2024, and that neither Defendant answered the Complaint or obtained an extension of time to respond within 21 days of being served. (Mot. for Default for Hollerman [Doc. No. 27]; Mot. for Default for Compass [Doc. No. 30].) Defendants argue that neither party was properly served pursuant to Fed. R. Civ. P. 4, and that even if it were, Compass responded within 21 days.

### 1.    Legal Standard

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, a party may obtain a default judgment where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). Default judgments are disfavored and should be granted sparingly. *See In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (internal citations omitted). "When determining whether a Default Judgment is appropriate, the Court must consider whether the assertedly defaulting party

has filed a responsive Answer, or other pleading, prior to an entry of Default Judgment."
*Semler v. Klang*, 603 F. Supp. 2d 1211, 1218-1219 (D. Minn. 2009). Defendants also
cannot be held in default for failing to respond when they have not been properly served
by plaintiffs. *See Norysn v. Dasai*, 351 F.3d 825, 829 (8th Cir. 2003).

Pursuant to Pursuant to Fed. R. Civ. P. 4, individuals and corporations have distinct
rules for whether service is valid. Service on an individual is governed by Rule 4(e), and
must be done by either:

> (1) following state law for serving a summons in an action brought in courts
> of general jurisdiction in the state where the district court is located or
> where service is made; or
>
> (2) doing any of the following:
>
>> A. delivering a copy of the summons and of the complaint to the
>> individual personally;
>>
>> B. leaving a copy of each at the individual's dwelling or usual place
>> of abode with someone of suitable age and discretion who resides
>> there; or
>>
>> C. delivering a copy of each to an agent authorized by appointment
>> or by law to receive service of process."

Fed. R. Civ. P. 4(e). Service on a corporation, partnership or association is governed by
Rule 4(h), and for service within a judicial district of the United States, service can be
effectuated by either:

> A. [following state law for serving a summons in an action brought in courts
> of general jurisdiction in the state where the district court is located or
> where service is made]; or
>
> B. by delivering a copy of the summons and of the complaint to an officer,
> a managing or general agent, or any other agent authorized by
> appointment or by law to receive service of process and--if the agent is

> one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or

Fed. R. Civ. P. 4(h)(1)(A)-(B).

Under Minnesota law, individuals and corporations also have distinct rules for whether service is valid. For personal service, service is effectuated:

> A. Upon an individual by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein …

> C. Upon a domestic or foreign corporation by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons, and if the agent is one authorized or designated under statute to receive service any statutory provision for the manner of such service shall be complied with.

Minn. R. Civ. P. 4.03. Certified mail is not a valid form of service under Minnesota law.

*See Melillo v. Heitland*, 880 N.W.2d 862 (Minn. 2016); *Nieszner v. St. Paul School Dist. No. 625*, 643 N.W.2d 645 (Minn. 2002).[3]

### 2.    Analysis

Plaintiffs cannot obtain a default judgment against Defendants, as Defendants were not properly served under Rule 4. According to Plaintiffs' Notice of Service of Process, both Defendants were served through certified mail. Plaintiffs do not allege that they attempted to serve Defendants in any other way. As this form of service is improper, Defendants were not validly served, and therefore there is no basis on which the Court

---

[3] While Minnesota previously allowed service by mail under certain circumstances, the 2018 amendments to Minnesota Rule of Civil Procedure 4.05 have replaced this procedure with a "Waiver of Service." *See* Minn. R. Civ. P. 4.05, advisory committee's note to 2018 amendments.

would grant a default judgment. As such, the Court denies the motion, and need not reach the parties' other arguments relating to Plaintiffs' motion for a default judgment.

### B.     Motion To Dismiss

Defendants argue that Plaintiffs have not plausibly alleged any breach of contract or breach of fiduciary duty claim against them, but only alleged certain "unfounded legal conclusions" that "(1) the contracts in question are securities; (2) Hollerman and Compass are banks within the meaning of Title 12; (3) Defendants breached unidentified contracts and fiduciary duties by refusing to follow the "orders" of Williams; and (4) the Knapps can act as prosecutors to enforce the criminal code[.]" (Defs' Mot. to Dismiss Br. at 3.) Defendants argue that these contracts—alleged to be either "promissory note[s]" or "bill[s] of exchange" (*Id.* ¶¶ 18-60)—are not "collateral securities," Defendants are not "reserve banks," and 12 U.S.C. § 412 does not provide a private right of action, together making Plaintiffs' alleged "orders" nonsensical and impossible. (Defs' Mot. to Dismiss Br. at 3-4.) Given that, Defendants argue that no facts are alleged that plausibly plead any breach of contract or fiduciary duty. (*Id.* at 10-12.) Moreover, Defendants argue that civil penalties under 12 U.S.C. § 504 are not legally available, and Plaintiffs' alleged criminal claims— the subject of Counts III-VI of the Complaint—have no basis in the law, as there is no private right of action under this civil or any relevant criminal statute and no claims are plausibly alleged. (*Id.* at 12-17.)

Plaintiffs argue that their pleadings meet the standard to survive a motion to dismiss, due to the more lenient treatment accorded pro se plaintiffs. (Pl. Mot. to Dismiss Br. at 4.) Plaintiffs argue that under "broad definitions and existing case law," the Contracts can be

interpreted as collateral securities, that banking regulations provide "principles" that can be "analogously applied" to the Contracts, and that a private right of action could be found in the Federal Reserve Act. (*Id*. at 13-15.) Plaintiffs argue that as such, Defendants fail to "consider the broader fiduciary and contractual responsibilities that may arise from the agency relationship" between the parties, and that more information will be elucidated during discovery proving their claims. (*Id*. at 17-21.) Finally, Plaintiffs argue that Counts III-VI of the Complaint do not constitute distinct causes of action, but rather "are alleged to provide a legal basis and context for Defendants' conduct, which Plaintiffs claim breached the standards of behavior expected under the civil obligations of contract and fiduciary duty." (*Id*. at 27; *see id.* at 22-30.)

### 1. Legal Standard

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Moreover, "a court is under no obligation to repeatedly accept baseless filings, particularly those of the sovereign citizen fashion." *Siruk v. State of Minnesota*, Case No. 20-CV-2373 (WMW/KMM), 2021 WL 1581242 at *3 (D. Minn. Feb 22, 2021), *report and recommendation adopted* 2021 WL 1577681(D. Minn. Apr. 22, 2021) (citing cases across Eighth Circuit district courts).

### 2.   Analysis

Plaintiffs' arguments are unavailing. As Defendants accurately argue, Plaintiffs have not alleged any facts plausibly demonstrating that the Contracts are "negotiable instruments" or "collateral securities." As the Contracts are not collateral securities, Plaintiffs have not plausibly alleged that Defendants breached their contractual or fiduciary duties by refusing to exchange the Contracts for Federal Reserve Notes and place those Federal Reserve Notes in escrow. Similarly, as there are no private rights of action under the civil and criminal statutes alleged, Plaintiffs have not plausibly alleged any cause of action under these statutes.

### a.   Nature of the Contracts

Minnesota law, mirroring the Uniform Commercial Code ("UCC"), defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time[.]" Minn. Stat. § 336.3-104. "[A]

promise or order is unconditional unless it states (i) an express condition to payment."
Minn. Stat. § 336.3-106(a).

Plaintiffs have not plausibly alleged that these Contracts are "unconditional promises to pay." Each Contract contains at least one express condition to payment. The Buyer and Seller Representation Contracts require that the seller find the buyer's offer acceptable, and that any agreed-upon transaction must successfully close. (Seller Representation Contract at 1, 4; Buyer Representation Contract at 2.) The Purchase Agreement and Sale Agreement include various conditions, including mortgage financing contingencies, inspection contingencies, and contingencies for the sale of the buyer's property. (Purchase Agreement at 2-5; Sale Agreement at 2-9.)

Further, these Contracts are not "collateral securities" subject to exchange for Federal Reserve Notes pursuant to 12 U.S.C. § 412. Section 412, in full, provides that:

> Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. **The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 92, 342 to 348, 349 to 352, 361, 372, or 373 of this title, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of sections 348a and 353 to 359 of this title, or bankers' acceptances purchased under the provisions of said sections 348a and 353 to 359 of this title, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under sections 348a and 353 to 359 of this title or any other asset of a Federal Reserve bank**. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve

System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

(emphasis added). The Contracts cannot plausibly be characterized as any of these defined "collateral securities."

Moreover, this provision plainly does not apply to Defendants. By its terms, 12 U.S.C. § 412 expressly applies to the right of "Federal Reserve bank[s]" to obtain Federal Reserve notes. Plaintiffs have expressly disclaimed the argument that Defendants are Federal Reserve banks within the meaning of the statute, and Defendants do not meet the definition of a "Federal Reserve bank"—nor any other kind of bank—under Title 12. 12 U.S.C. § 221.

As the Contracts cannot be plausibly characterized as negotiable instruments or securities of any kind under state or federal law, and as Defendants are not banks, the Contracts cannot be redeemed as "bills of exchange" for Federal Reserve notes.[4]

---

[4] Plaintiffs' argument appears to be a variation on the "redemption" scheme propounded by the sovereign citizen movement. This scheme, "equal parts revisionist legal history and conspiracy theory[,]" rests on the belief that through "contracts" with the Federal government such as birth certificates and Social Security cards, U.S. citizens maintain both a flesh-and-blood existence and a fictitious entity or "strawman" that represents, but is separate from, the real person. *See Bryant v. Washington Mutual Bank*, 524 F.Supp.2d 753, 760 (W.D.Va. 2007) (discussing the sovereign citizen "redemption" scheme); *see also* Kalinowski, *A Legal Response*, at 164-67. Sovereign citizens believe that, beginning in 1933, the Federal Reserve "began issuing private commercial debt instruments known as 'Federal Reserve Notes'[, and i]n order to meet the demand for ever growing federal spending, the government assigned all U.S. born citizens—present and future—as collateral." Kalinowski, *A Legal Response*, at 164-67.

14

### b.    Breach of Contractual And/Or Fiduciary Duties

Plaintiffs have not plausibly identified any specific contractual provision in the Contracts or any other Contract that Defendants have breached. On its own review, the Court notes that the only term that could possibly be construed to create such a duty is located in the Buyer Representation Contract, which Contract requires that Hollerman "act in [Plaintiffs'] best interest at all times, subject to any limitations imposed by law or dual agency." (Buyer Representation Contract at 1.)

---

Sovereign citizens believe that through "redemption," "a process that looks similar to divestment from an artificial person, the Sovereign Citizen can separate himself from the fictitious strawman and make use of the funds that are located in the Treasury Direct Account [or TDA, a government account containing money borrowed by the Federal government based on pledging the property and assets of every U.S. citizen]." *Id*. A bill of exchange "purportedly accesses the [TDA], which [sovereign citizens] believe contains the balance of the strawman's bond[.]" *Id.* at 166; *see also* A Dictionary of the Peculiar (describing a bill of exchange as a "fake check").

While most cases considered by this Court's sister courts have concerned a party's attempts to pay for goods and services with a "bill of exchange," the demand that Defendants exchange the Contracts for Federal Reserve Notes, *i.e.*, cash, is closely related. These versions of the "redemption" scheme are called the "vapor money" theory. "The essence of the 'vapor money' theory is that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *McLaughlin v. CitiMortgage, Inc.*, 726 F.Supp.2d 201, 212 (D. Conn. 2010).

This District and other courts across the country have consistently rejected the "redemption" and "vapor money" theories as frivolous and nonsensical. *See Connell v. Wells Fargo Bank, N.A.*, Civil No. 10–3133 (MJD/FLN), 2011 WL 4359979 at *2 (D. Minn. Sept. 19, 2011) (citing *Hennis v. Trustmark Bank*, No. CIV.A.210CV20KSMTP, 2010 WL 1904860, *5 (S.D. Miss. May 10, 2010)); *Baker v. CitiMortgage, Inc.*, Civil No. 16–1103(DSD/JSM), 2016 WL 4697334 at *2 (D. Minn. Sept. 7, 2016) ("There is no legal authority that supports the "vapor money" theory."); *see also Bryant*, 524 F.Supp.2d at 760; *Harp v. Police*, No. CV 23-2577, 2023 WL 5152625 (E.D. Penn. Aug. 10, 2023); *Sanders v. MTC Financial Incorporated*, No. CV-22-00066-TUC-SHR, 2022 WL 2665952 at *4 (D. Az. July 11, 2022); *Robertson v. Wells Fargo Home Mortgage*, No. 10–CV–1110–BR, 2011 WL 1937240 at *7-9 (D. Ore. May 20, 2011).

However, Plaintiffs have not plausibly alleged any way in which Defendants breached their duty to "act in Plaintiffs' best interest[.]" Plaintiffs fail to identify any case law supporting the argument that Defendants could plausibly breach their contractual duty through their refusal to follow Williams' "orders" to engage in an at-best fruitless effort to exchange the Contracts for Federal Reserve Notes. This is no surprise: a party's failure to engage in unlawful or genuinely impossible acts cannot be the basis for a breach-of-contract claim. *See generally Robb v. Parten*, 226 N.W. 515, 516 (Minn. 1929) (Hilton, J., dissenting) ("In this state however the rule was early adopted, without qualification, that one who binds himself by express contract to do something in itself possible must perform his engagement unless prevented by an act of God, the law, or the other party.")

Similarly, Plaintiffs fail to plausibly allege any breach of a fiduciary duty. "To prevail on a claim of breach of fiduciary duty, a plaintiff must prove four elements: duty, breach, causation, and damages." *TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 434 (Minn. Ct. App. 2017). Real estate brokers like Defendants owe various fiduciary duties to their client, including duties of good faith and loyalty, to act in the clients' best interests, carry out their clients' lawful instructions, and to communicate "all facts of which he has knowledge which might affect the principal's rights or interests[,]" *See White v. Boucher*, 322 N.W.2d 560, 564 (Minn. 1982); *see also* Minn. Stat. § 82.67.

Plaintiffs argue that "the discovery process will provide evidence that Defendants breached the fiduciary duties of good faith and loyalty[,]" because Defendants' argument that the exchange of the Contracts for Federal Reserve Notes was "unlawful and

impossible" is baseless, and Plaintiffs can prove and have plausibly alleged that Defendants acted contrary to Plaintiffs' best interests. (Pl. Mot. to Dismiss Br. at 20.)

As there is no legal support for the proposition that the Contracts are negotiable instruments, collateral securities, or otherwise exchangeable for Federal Reserve Notes, Plaintiffs have not plausibly alleged that Defendants have violated any fiduciary duties to the Knapps by failing to perform a plainly impossible and unlawful act. As such, Plaintiffs' claims that Defendants violated their fiduciary duties is unavailing, and the Court dismisses these claims.

### c.   Civil And Criminal Penalties

Plaintiffs have not plausibly alleged that Defendants are civilly liable pursuant to the Federal Reserve Act, or criminally liable for "laundering of monetary instruments" under 18 U.S.C § 1956; "transportation of stolen securities under 18 U.S.C. § 2314; and "securities and commodities fraud" under 18 U.S.C. § 1348.

Plaintiffs concede that Defendants are not civilly liable under 12 U.S.C. § 504, and that references to this statutory provision are "not intended to assert that Defendants are banks or that they are directly liable under these banking statutes[,]" but rather "[t]he reference to banking statutes within the Complaint is meant to provide context to the allegations regarding the nature of the breaches of contract and fiduciary duty." (Pl. Mot. to Dismiss Br. at 23.) Similarly, Plaintiffs concede that they do not seek to invoke a private right of action to enforce the federal criminal statutes in question, but instead raise these criminal statutes to "provide a legal basis and context for Defendants' conduct, which

Plaintiffs claim breached the standards of behavior expected under the civil obligations of contract and fiduciary duty." (*Id*. at 27.)

As discussed *supra*, Plaintiffs' arguments that they have plausibly alleged a breach of contract and or breach of fiduciary duty by Defendants are unavailing. These civil and criminal statutory provisions provide no insight, context, or legal basis for the Court to find such a breach or violation. As such, the Court dismisses these claims.

### d.      Conclusion

Construing Plaintiffs' complaint liberally, accepting Plaintiffs' allegations as true, and viewing these allegations in the light most favorable to Plaintiffs, Plaintiffs have, as a matter of law, not alleged any breach of contract or violation of a fiduciary duty, and thus not stated a claim on which relief can be granted. As such, the Court dismisses all of Plaintiffs' claims, and grants Defendants' Motion to Dismiss.

### C.      Motion To Compel Communication With Williams

Plaintiffs argue that Defendants must communicate with Williams, as he is their "attorney-in-fact" pursuant to Minn. Stat. § 523.20 as designated by "limited power of attorney" documents executed by Plaintiffs and Williams (*See* Pl's Mot. to Compel [Doc. No. 22], Exs. A-C [Doc. Nos. 23-25].) They argue that Defendants' refusal to communicate with Williams, despite his lack of licensure as an attorney, "obstructs Mr. Knapp's statutory rights and due process[,]" and that Plaintiffs' legitimate choice of representation" is protected by their "fundamental due process rights[.]" (*Id*. at 2.; *see also* Pls' Reply Br. [Doc. No. 43] at 2-3.)

Defendants argue that Plaintiffs' motion, styled a "motion to compel" and thus falling under Fed. R. Civ. P. 37, is entirely baseless. Defendants argue that the "limited power of attorney" documents do not create circumstances under which a party may be liable for refusing to accept the authority of an attorney-in-fact under Minnesota law, and that even if these documents validly created an attorney-in-fact relationship between the Knapps and Williams, Defendants are not obligated to communicate with Williams and therefore participate in his unlicensed practice of law. (Defs' Mot. to Compel Br. [Doc. No. 36] at 6-11.) Defendants also argue that pursuant to Fed. R. Civ. P. 37(a)(5)(B), the Court must grant them reasonable expenses including attorney's fees for the costs of defending Plaintiff's motion. (*Id*. at 11-12.)

### 1.    Legal Standard

Fed. R. Civ. P. 37 provides the standard for motions to compel. Pursuant to the rule, "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The Rule enumerates three types of motions that may be brought: 1) a motion "to compel disclosure"; 2) a motion "to compel a discovery response"; and 3) a motion "related to a deposition." Fed. R. Civ. P. 37(a)(3). If such a motion is denied, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party…who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). The fees provision does not apply if "the motion was substantially justified or other circumstances make an award of expenses unjust." *Id*.

There is no provision under the Rule allowing for a motion to compel communication with a third party. Plaintiffs also cite to this Court's Local Rule 7.1, although no provision for such a motion exists under the Local Rules. As such, the Court considers this motion under the closest federal rule available, Fed. R. Civ. P. 37.

## 2.    Liability For Refusal To Communicate With Williams

Defendant's argument that they are not liable for their refusal to communicate with Plaintiffs' desired representatives is persuasive. While Minn. Stat. § 523.20 creates liability for a party who does not accept the authority of an attorney-in-fact, liability only exists if all six of the criteria enumerated under the statute are met.

First, for liability to exist, Minn. Stat. § 523.20 requires that the power of attorney in question "is executed in conformity with section 523.23 or a form prepared under section 523.231[.]" Pursuant to Minn. Stat. § 523.23:

> Except for a form prepared under section 523.231, to constitute a "statutory short form power of attorney [for military members in active service]," as this phrase is used in this chapter **the wording and content of the form in subdivision 1 must be duplicated exactly and with no modifications**, parts First, Second, and Third must be properly completed, and the signature of the principal must be acknowledged. Failure to name a successor attorney-in-fact, to provide an expiration date, or to complete part Fourth does not invalidate the power as a statutory short form power of attorney. **A power of attorney that does not satisfy the requirements of this subdivision or a form prepared under section 523.231, but purports to be a statutory short form power of attorney, may constitute a common law power of attorney that incorporates by reference the definitions of powers contained in section 523.24; however, a party refusing to accept the authority of the common law attorney-in-fact is not liable under section 523.20.**

Minn. Stat. § 523.23, Subd. 3. (emphasis added, and edited for clarity). Second, for powers of attorney executed on or after January 1, 2014, Minn. Stat. § 523.20 requires that the

power of attorney "contain[] an acknowledgement that the attorney-in-fact has read and understood the notice to the attorney-in-fact required under section 523.23 [,]" and Minn. Stat. § 523.23, Subd. 1 provides specific language to this effect.

Plaintiffs' limited power of attorney does not conform with the language of the form provided in Minn. Stat. § 523.23, nor do they include the required acknowledgement. As such, Defendants have no liability for their refusal to communicate with Williams.

### 3.    Validity Of Plaintiffs' Demand To Communicate

Regardless of whether Defendants can be held liable for their refusal to communicate with Williams, Plaintiffs' demand that they do so is itself unavailing, as Plaintiffs cannot validly demand that Defendants participate in Williams' unlicensed practice of law.

Minn. Stat. § 523.24 sets forth the types of powers that may be granted to an attorney-in-fact pursuant Minnesota's statutory short form power of attorney, which includes the ability of an attorney-in-fact to pursue legal claims on behalf of the principal. However, in *In re Conservatorship of Riebel*, 625 N.W.2d 480 (Minn. 2001), the Minnesota Supreme Court held that a power of attorney does not authorize a non-attorney to act as an *attorney* on behalf of the principal. *Id*. at 482; *accord Prior Lake State Bank v. Mahoney*, 216 N.W.2d 681 (Minn. 1974). The court explained:

> The more reasonable interpretation of the statutory language is that a power of attorney authorizes the attorney-in-fact to act on behalf of the principal as the client in an attorney-client relationship. That is, the attorney-in-fact may make decisions concerning litigation for the principal, but a nonlawyer attorney-in-fact is not authorized to act as an attorney to implement those decisions. Consistent with this reading, Minn. Stat. § 523.24, subd. 10(8)

authorizes an attorney-in-fact to hire an attorney-at-law to act on behalf of the principal.

*Id*. at 482-83 (cleaned up and internal citations omitted).

Minn. Stat. § 481.02 describes the various forms of conduct that are considered the unauthorized practice of law under Minnesota law. These include:

[T]o appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct, or defend the same, except personally as a party thereto in other than a representative capacity, or, by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel, or to prepare legal documents, or as being engaged in advising or counseling in law or acting as attorney or counselor at law, or in furnishing to others the services of a lawyer or lawyers, or, for a fee or any consideration, to give legal advice or counsel, perform for or furnish to another legal services…

Minn. Stat. § 481.02, Subd. 1.; *see also In re Disciplinary Action Against Ray*, 452 N.W.2d 689, 693 (Minn. 1990) (advising clients in legal matter and attempting to negotiate settlement is the practice of law); *Fitchette v. Taylor*, 254 N.W. 910, 911 (1934) (giving advice regarding legal status and rights of another is the practice of law). The State of Minnesota has a strong public policy against the unlicensed practice of law. Individuals or corporations engaged in the unlicensed practice of law are guilty of a misdemeanor, and county attorneys, the Minnesota Attorney General, and private parties injured by the unlicensed practice of law are authorized to seek injunctive and monetary relief. *See* Minn. Stat. § 481.02, Subd. 8; Minn. Stat. § 8.31.

In his "representation" of Plaintiffs, Williams engaged in several of the activities proscribed for non-attorneys under Minnesota law. Williams has, based on both Plaintiffs' representations and his own representations, provided legal advice to Plaintiffs such that

he is "controlling…what is occurring." (*See* Hirte Decl. ¶¶ 12-23; *see also* Second Kouba Decl., Ex. E.) While Williams does not hold himself out as a licensed attorney, he does hold himself out as competent to give legal advice, prepare legal documents, and furnish the services of a lawyer in exchange for a substantial fee on WWLG's website. (*See* WWLG, *Questions and Answers*.) Similarly, while Kimbrough has not communicated in writing with Defendants, he holds himself out as competent to provide legal advice, joined the parties' meet-and-confer while purporting to act as Plaintiffs' attorney-in-fact, and has participated in this suit as the signatory for Plaintiffs' affidavits of service. (*See* WWLG, *About*; Hirte Decl. ¶ 17; Notice of Service of Process.)[5]

Plaintiffs' argument that their choice of legal representative is protected by "fundamental due process rights" is also unpersuasive. States' right to regulate the practice of law within their jurisdiction, including prohibiting individuals who are not licensed to practice law from representing clients, is well-established. *See Nowicki v. Voss*, 103 F.3d 133 (Table) at *2-3 (7th Cir. 1996) (citing *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624-25 (1995) (upholding Wisconsin law barring the unlicensed practice of law); *see also Pilla v. American Bar Ass'n*, 542 F.2d 56 (8th Cir. 1976) (upholding that "federal and state requirements that the practice of law in the courts be limited to persons who are licensed attorneys and who are qualified to so practice by training and by character" are

---

[5] Kimbrough has also been previously warned by other courts to cease his attempts to engage in the unlicensed practice of law, which he has done in both state and federal courts. *See JMC Prop. Grp., LLC v. Fortune Co., Inc.*, 2023 U.S. Dist. LEXIS 43304, *7-8 (S. D. Ind. Mar. 14, 2023); *Kimbrough v. Fortune Co., Inc.*, No. 23-2119, 2023 WL 8827631 (7th Cir. Dec. 21, 2023).

constitutional). As a result, Plaintiffs do not have the absolute right to be represented by anyone.

In light of Minnesota's strong public policy against the unlicensed practice of law, ordering Defendants to communicate with an individual engaged in the unlicensed practice of law would place Defendants in an absurd position. The Court will not do so, and denies Plaintiffs' motion to compel communication with Williams.

### 4.    Reward Of Costs And Fees

Defendants also request reasonable costs and fees pursuant to Fed. R. Civ. P. 37(a)(5)(B).    The Court must grant Defendants their reasonable expenses incurred in opposing Plaintiffs' motion, including attorney's fees, unless Plaintiffs' motion was substantially justified or the award of expenses would be unjust.    Plaintiffs' motion to compel communication was not substantially justified, and an award of expenses would not be unjust. As such, the Court grants Defendants' motion for costs and fees as related to the motion.

**III.   ORDER**

Based on the submissions and the entire file and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Defendants' Motion to Dismiss [Doc. No. 10] is **GRANTED,** and the claims against Defendants are **DISMISSED WITH PREJUDICE**;

2.  Plaintiffs' Motion to Compel Communication with Attorney-in-Fact [Doc. No. 22] is **DENIED**;

3.  Plaintiffs' Motions for Default Judgment as to Hollerman [Doc. No. 27] and Compass [Doc. No. 30] are **DENIED**;

4.  Defendants shall submit an affidavit and supporting evidence showing their reasonable attorneys' fees and other expenses associated with the Motion to Compel Communication [Doc. No. 22] on or before June 14, 2024;

5.  Plaintiffs may file a responsive brief by not later than July 3, 2024, limited to addressing the reasonableness of the defendants' attorneys' fees and costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: June 4, 2024                         s/ *Susan Richard Nelson*
                                            SUSAN RICHARD NELSON
                                            United States District Judge